DONALD RUSSELL, Circuit Judge:
 

 This is a consolidated appeal by some eighty-odd Robins’ Chapter 11
 
 [1]
 
 claimants from the disallowance of their claims by the District Court sitting in Bankruptcy. The disallowance was for failure of the appellants to file a timely questionnaire which was, in the opinion of the District Court, an essential part of their proofs of claims. We affirm, but without prejudice to the right of appellants to file petitions for reconsideration, under the standards established in Rule 60(b), Fed.R.Civ.P.
 

 I.
 

 The earlier history of this corporate reorganization has been reviewed in earlier decisions of this Court and need not be re
 
 *1093
 
 stated here.
 
 Maressa v. A.H. Robins Company, Inc.,
 
 839 F.2d 220 (4th Cir.1988);
 
 In Re A.H. Robins Co., Inc.,
 
 828 F.2d 1023 (4th Cir.1987),
 
 cert. denied,
 
 — U.S.-, 108 S.Ct. 1246, 99 L.Ed.2d 444 (1987);
 
 A.H. Robins Co., Inc. v. Piccinin,
 
 788 F.2d 994 (4th Cir.1986),
 
 cert. denied,
 
 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986). This appeal is concerned with the required procedure established by the District Court for the filing and proving of Daikon Shield claims. That procedure was painstakingly hammered out by the District Court after extended participation by the Debtor, the Daikon Shield Claimants’ Committee, the Unsecured Creditors’ Committee, and the United States Bankruptcy Trustee. As established, it consisted of what has been properly described as a “two-tier” process. As the first step in this process, the District Court, by order dated November 21, 1985, directed the publication of a notice, to be approved by it, to all Daikon Shield claimants. The approved notice required claimants to file on or before April 30, 1985, “a simple statement containing your full name and complete mailing address and the fact that you are making a Daikon Shield claim....” The same order of the District Court set forth a second act to be performed by the claimant in completing the filing of a claim. This second step was the completion and filing of a questionnaire setting forth in some detail the injury suffered by the claimant.
 
 [2]
 
 The District Court provided in this order that the original notice for the filing of a claim should include a clear statement that “[ajfter your claim is registered, you will be sent a questionnaire with additional instructions.
 
 You must complete the questionnaire and return it if you are a domestic claimant by June 30, 1986, and if a foreign claimant by July 30, 1987, or your claim may be disallowed
 
 ” (Italics added). Such was the procedure established by the District Court for the filing of Daikon Shield claims. These requirements were duly included in the notice to claimants as published. In the same order providing for the notice, the District Court imposed upon the Clerk of the Bankruptcy Court the duty “as soon as practicable after receipt of a Daikon Shield claim pursuant to this order ... [to] send a questionnaire, in the form to be approved by further order of the Court, to each claimant that timely files a claim ... [which] questionnaire must be completed under penalty of perjury and timely returned to the Court or the claim may be disallowed.”
 

 As contemplated by the order of November 21,1985,
 
 [3]
 
 the District Court formulated and approved the form of questionnaire. This questionnaire, titled “Daikon Shield Questionnaire and Claims Form” informed the claimant that she
 
 “must
 
 complete and return this questionnaire ... as soon as possible” (Italics in questionnaire). The questionnaire itself requested first, some basic information such as the claimant’s name, address, telephone number, social security number, date of birth, and, secondly, information of the claimant’s use of the Daikon Shield, such as dates of insertion and removal, the type of injury alleged and the names of physicians or clinics visited by the claimant. There was no requirement of any medical records or statements from doctors.
 

 The November 21 order of the District Court was scrupulously followed by the Clerk and Debtor. The initial notice to claimants was extensively published both here and abroad at considerable expense. Over 325,000 claimants filed the initial statement of claim within the time limits permitted. The Clerk of the Bankruptcy Court promptly mailed the approved ques
 
 *1094
 
 tionnaire to all these claimants. More than 130,000 of them, however, did not file, in a timely manner, the completed questionnaire. The Debtor moved the Court to disallow all such defaulting claims “on the ground that [the] elaim[s] [were] never properly completed, as required by the Court’s orders.” After hearing all the parties, including the Daikon Shield Claimants’ Committee, the Bankruptcy Court on May 5, 1987 entered another order. In its ruling after the hearing, the District Court denied the motion to disallow at that time the claims of these defaulting claimants and granted them “a final opportunity to file a completed Questionnaire, to explain why they did not return the earlier Questionnaire by the deadline established by the Court and to request a hearing on the issue of same.” Notice in conformity with the provisions of the Court’s order and a questionnaire form were duly mailed to Daikon Shield Claimants “who [had] not filed a completed Questionnaire.” This notice, which was approved by the Court, began by stating that the Debtor had moved to dismiss such claims for failure to file a timely questionnaire and then said: “Before ruling on that request, the Court is giving you a
 
 final
 
 opportunity to file a completed questionnaire and to explain why the earlier questionnaire was not filed” (Italics in original notice). Under the heading, “Action required by you,” the notice further advised the claimants that “[y]our claim will be disallowed without further notice if you do not timely return the questionnaire.” It proceeded to state that the response to this second opportunity to file the required questionnaire “must be met by submitting such documents not later than July 15, 1987 or [your claim] will not be processed and your claim will be disallowed without further notice.” Finally, to make completely certain that every claimant understood her obligation, the notice concluded with this advice, set out with indention as a separate item in the notice:
 

 WARNING
 

 If you do not return this completed form by the deadline shown, you will never be able to obtain compensation for any claim you have or may hereafter have against the A.H. Robins Co. arising out of the use of the Daikon Shield.
 

 The District Court entered a subsequent order on July 20, 1987, in which it ruled that all claims of claimants who had not filed a completed questionnaire in accordance with the second opportunity granted by the Court’s order of May 5 were “disallowed.” The District Court, however, provided in this order “that upon written request received in the Clerk’s office on or before September 11, 1987, the Court will reconsider the allowance (disallowance, sic) effected by this order.” Later, on July 27, 1987, a “Notice of Disallowed Claims” was given all parties whose Daikon Shield claims had been disallowed by the order of July 20. In such Notice as issued by the District Judge the party [who had not filed the questionnaire] was advised that
 

 [a]s of this date, you are barred under this claim from ever obtaining compensation arising out of any present or future injury you may have or may in the future suffer from any alleged use of Daikon Shield....
 

 However, in the interest of fairness and certainty, the Court will,
 
 if requested by you in writing received in the Clerk’s Office on or before September 11, 1987
 
 grant you a hearing which will be held on September 21,1987, commencing at 9 o’clock a.m. in the Courtroom of this Court for purposes of reconsidering the disallowance of this claim....
 

 Your failure to seek a hearing or to submit a written explanation, within the time allotted, will result in the disallowance becoming final, and you will receive no further notice regarding this case (Italics in original).
 

 The claimants were given in addition to this notice, a form for requesting reconsideration of the disallowance of their claims. The form provided that the claimants could choose either to have a hearing or merely to submit a statement of their reasons why in their opinion they were entitled to reinstatement.
 

 
 *1095
 
 A large number of claimants who had not filed timely questionnaires, submitted petitions for rehearing, supported with explanation of their failure so to file, but only a few appeared at the hearing on September 21, 1987. Those claimants who had filed requests for reconsideration but had not appeared at the hearing on September 21 had their claims referred to a Special Master for evaluation and report. The Special Master, at the completion of his assignment, reported on the requests for reconsideration which had been referred to him. In his report, he recommended approval of some requests for reconsideration and allowance, and denial of others. The District Court reviewed the report of the Special Master after notice to the claimants. At the hearing the District Court made its ruling on the requests, some of which it granted and others it disallowed. The appellants here were among the claimants whose requests were disallowed and with respect to whom the disallowance was stated to be final. The appellants have appealed that ruling. We review that ruling under an order consolidating all such claims for decision.
 

 The appellants have raised a number of objections to the dismissal of their claims. Their primary objection is that the failure to comply with the requirement for filing a completed questionnaire was not a proper bar to their claims or a justification for the sanction of dismissal of their claims. The questionnaire, in their opinion, was merely a step in a discovery process and not an essential step in perfecting their proof of claim. As an incident in a discovery process, it, though not fulfilled, would not support the extreme sanction of a dismissal of their claims. They argued further that the material required by the questionnaire was of such minimal value that the Debtor could not have been prejudiced by their failure to file the completed questionnaires. Absent prejudice, failure to comply with a discovery request, in their opinion, was not a proper basis for dismissal. They cite in support of their argument
 
 Wilson v. Volkswagen of America, Inc.,
 
 561 F.2d 494 (4th Cir.1977),
 
 cert. denied,
 
 434 U.S. 1020, 98 S.Ct. 744, 54 L.Ed.2d 768 (1978).
 
 [4]
 

 We do not agree with the contention of the appellants that the questionnaire was not an appropriate, or an essential, step in the filing of these claims. The claims of the appellants are undisclosed, unscheduled, and unliquidated, liabilities of the Debtor. They thus do not qualify as a class of liabilities which, if included in the Debtor’s scheduling of liabilities, would “constitute
 
 prima facie
 
 evidence of validity” Rule 3003(b)(1). Since these claims are unliquidated and possibly disputed, it is necessary for the claimant “to file a proof of claim.”
 
 In re South Atlantic Financial Corp.,
 
 767 F.2d 814, 819 (11th Cir. 1985),
 
 cert. denied,
 
 475 U.S. 1015, 106 S.Ct. 1197, 89 L.Ed.2d 311 (1986). Further, that proof of claim must be filed within the time fixed by the Court and “any creditor who fails to do so shall not be treated as a creditor with respect to such claim for the purposes of voting and distribution.” Bankruptcy Rule 3003(c)(2) and (3). The form with which a claimant must comply in filing his “Proof of Claim” is defined in Bankruptcy Rule 3001(a) as “a written statement setting forth a creditor’s claim.” In its Official Forms, the Bankruptcy Rules amplify on this requirement providing that in tort claims such as those of the appellants, the claimant is to set forth in his proof the “ground of liability” on which he bases his claim. Official Form No. 19, paragraph 3. Simple notice of a claim accordingly will not satisfy this requirement. In fact, there is respected authority for the proposition that “mere notice of a claim alone is not to be called an informal proof of claim and does not excuse the absence of a proper timely proof the law requires,”
 
 In re International Horizons,
 
 751 F.2d 1213, 1217 (11th Cir.1985), and “knowledge by the debtor of the creditor’s claim, standing alone, ... [is not] a sufficient basis upon which to allow the filing of an amended claim,”
 
 In re South Atlantic Financial
 
 
 *1096
 

 Corp.,
 
 767 F.2d 814, 819 (11th Cir.1985),
 
 see also Fyne v. Atlas Supply Co.,
 
 245 F.2d 107 (4th Cir.1957). Moreover, the proof of claim must be filed within the time fixed or as extended by the Court.
 
 In re Pigott,
 
 684 F.2d 239, 243-44 (3d Cir.1982);
 
 Hoos & Co. v. Dynamics Corp. of American,
 
 570 F.2d 433, 439 (2d Cir.1978), (“This clear Congressional intent to require filing of valid proofs of claims within the time limits that it has set is sufficient to preclude us from finding exceptions to those rules in the supposed interest of equity.”);
 
 Perry v. Certificate Holders of Thrift Savings,
 
 320 F.2d 584, 589 (9th Cir.1963). However, there is authority under which perhaps the first statement of a claimant of his intention to make a claim is sufficient to qualify as an informal claim, providing a basis for perfection as a claim by a subsequent filing, where substantial justice warrants such allowance. It is possible the District Court assumed the mailing of a statement of an intention to make a claim was sufficient as an informal claim. If so, it recognized that such bare statement was insufficient to comply with the bankruptcy requirement of “Proof of Claim” and for that reason it required the completion and filing of the questionnaire. However, if we treat the notice of claim as an informal claim, that fact will not “excuse the absence of a proper timely proof [that] the law requires.”
 
 In re International Horizons, supra,
 
 at 1217.
 

 To summarize: the statement by a claimant in response to the first notice in this proceedings, consisting of the bare statement of an intention to make a claim will not satisfy the requirement of proof of a valid claim under the provisions of the Bankruptcy Act; at most, such statement would qualify as an “informal claim” entitling the claimant thereafter to file a perfecting valid proof of claim. But without amendment or perfection as provided by the completed questionnaire claimants’ initial statement of intention to make a claim would be insufficient as valid proof of claim.
 

 We think it clear that the procedure of the District Judge in this proceeding clearly recognized these principles and sought to provide a procedure whereby every claimant could file a proof of claim in conformity with the requirements of the Bankruptcy Act. He recognized that the statement called for by the original notice, irrespective of whether it could qualify as an informal claim, was not sufficient as a valid proof of claim because it included no statement of the “ground of liability.” But he provided the claimant with a method for perfecting and completing a filing of a valid claim by stating the ground of liability in her case. In so doing, he realized that many claimants, acting in instances without counsel, would not know how to complete their filing as a perfecting amendment and therefore directed the mailing to the claimant of the questionnaire which, when completed, would satisfy the criteria for an amended valid proof of claim. He clearly warned every claimant that she must complete and file this questionnaire within the time limits fixed in his order, otherwise her claim would be disallowed.
 

 Compliance with these time limits was not, as one court has correctly emphasized, “a purposeless formality,” because there
 

 must come a time when an arrangement becomes final, so to speak. Not only are the creditors who vote for the plan entitled to this. The debtor itself must be able to function, and new creditors might not extend credit, absent such finality. It would be inequitable as to all three— old creditors, debtor, and new creditors— not to have a cut-off date beyond which even claims on a schedule indebtedness may not be filed. Thus, however much we would like to permit the bankruptcy court to consider in a particular case, including this one, whether it would be “equitable” to permit late filing of a scheduled claim, to do so, would put the bankruptcy courts in the unenviable position of indefinitely having to consider claims whenever some sort of excuse is asserted. Such a procedure would destroy the objective of finality which Congress obviously intended to promote.
 

 Hoos & Co., supra,
 
 570 F.2d at 439 (per Judge Oakes).
 

 
 *1097
 
 Finally, the extreme length to which the District Court went in an effort to give every claimant an opportunity to file the required questionnaire and to complete her claim cannot be overlooked. After the time fixed for filing the completed questionnaire had expired, the District Court, as we have seen, directed a new notice, accompanied by the questionnaire form to be given the defaulting claimants. In this notice, the claimant was unmistakably warned, not once but several times, that the failure to file the completed questionnaire within the required time would result in the disallowance of her claim. Despite the clarity of this second notice, the District Court offered the defaulting claimant still another opportunity to satisfy the requirement of a statement of her claim by filing the completed questionnaire. The appellants failed to meet any of the deadlines for filing the questionnaire. The District Court even offered the claimants the opportunity thereafter to meet the requirement by offering belatedly some reason satisfactory to the Court for their failure, and with an opportunity for a formal hearing on their excuse before the District Court itself. The appellants did avail themselves of the opportunity to file a request to be excused for their failure and offered various reasons for their failure. The District Judge refused to excuse the failure in the cases of these appellants. It is this denial of their requests for reconsideration which is the subject of the appeal herein.
 

 The appellants concede that the District Court’s denial is to be reviewed under an abuse-of-discretion standard. They do not argue that the District Court was guilty of an abuse of discretion on the facts. They argue that the District Court’s error was that, in reviewing the requests for reconsideration under the provisions of Bankruptcy Rules, it had used the “excusable neglect” criterion as stated in the Bankruptcy Rule. It is their position that the District Court should rather have followed the standard of review as provided in Rule 60(b), Fed.R.Civ.P. The difficulty with this position, however, is that the Bankruptcy Rule’s provision for allowing reconsideration of a disallowance of a claim for “excusable neglect,” is not in the broader language of 60(b). Since the appellants are appealing the denial under the Bankruptcy Rule, the District Court’s denial of the appellants’ claims was entirely proper and consonant with the Bankruptcy Rule.
 

 This does not mean that these appellants, or any one of them, may not file a motion for review of the denial of their claims under Rule 60(b). We have said earlier in another appeal in this proceeding that they have such right.
 
 Maressa v. A.H. Robins Company, Inc.,
 
 839 F.2d 220. But, in the absence of a Rule 60(b) motion and ruling thereon, this order of the District Court under the Bankruptcy Rule from which these appeals are taken must be affirmed without prejudice to the right of any of the appellants to file hereafter a 60(b) motion in the District Court.
 

 AFFIRMED.
 

 *ADDENDUM
 

 APPELLANT APPEAL NUMBER DALKON SHIELD NUMBER
 

 Jacqueline Wiltz 88-1012 39104
 

 Barbara J. Taite 88-1021 65950
 

 Sharon Malinowski 88-1022 204908
 

 Dorothy Akubue 88-1025 13671
 

 Rachel Simmons 88-1027 319067
 

 Gladys Chesnut 88-1032 252216
 

 Gracie McDonald 88-1033 97033
 

 Ann Long 88-1034 172050
 

 Linda Papison 88-1035 147179
 

 Jo Ann Caldwell 88-1036 14009
 

 Margaret M. Keane 88-1043 165255
 

 Jill N.T. Oda 88-1051 27130
 

 Angela Parr 88-1053 4658
 

 Betty S. Davis 88-1055 1571
 

 Gladys Jarvis 88-1056 86455
 

 
 *1098
 
 APPEAL NUMBER APPELLANT DALKON SHIELD NUMBER
 

 88-1057 Shelia Lawson 315378
 

 88-1058 Albertha L. Labadie 177923
 

 88-1059 Algonia Gobdson 136272
 

 88-1061 Alice Lockett 75605
 

 88-1062 Dianne Fraser 196281
 

 88-1064 Doris J. Deville 321088
 

 88-1065 Janice T. Smith 213118
 

 88-1066 Betty L. Peterson 156126
 

 88-1067 Martha Larry 310921
 

 88-1068 Betty L. Mikeska 143763
 

 88-1069 Magalis O. Menendez 260489
 

 88-1070 Rosemarie Q. Sosa 206106
 

 88-1072 Virginia R. Gray 287635
 

 88-1073 Bobbie N. Thorborne 221004
 

 88-1074 Eloise Arnold 190913
 

 88-1075 Sandra M. McIntyre 319237
 

 88-1076 Kathryn Underwood 248602
 

 88-1077 Martha E. Bermudez 61128
 

 88-1078 Martha E. Bermudez 157469
 

 88-1079 Dorothy R. Erwin 191969
 

 88-1081 Desiré A. Stokes 158599
 

 88-1082 Laurlene Hardy 179925
 

 88-1083 Joyce M. Bressem 213320
 

 88-1084 Doris Burns 70346
 

 88-1085 Rosemary Luscombe 218405
 

 88-1086 Glynda McLamb 322047
 

 88-1087 Erma Mons 208422
 

 88-1088 Joan Schickert 45039
 

 88-1089 Gladys L. Allen 318384
 

 88-1090 Maria R. Castaneda 191220
 

 88-1092 Rebecca P. Zeigler 128090
 

 88-1093 Deloris R. Healy 294361
 

 88-1094 Bettye Russell 100363
 

 88-1096 Gaye P. Williams 197937
 

 88-1560 Julia Matheny (Ferguson) 88174
 

 88-1561 Leny Simon Srimongkol 321725
 

 88-1562 Bertha Hunter 72149
 

 88-1563 Mercile M. Julien 55377
 

 88-1565 Jacqueline C. Greger 4970
 

 88-1568 Paulette Williams 132805
 

 88-1569 Cynthia Black 139910
 

 88-1570 Jacqueline R. Thomas 118174
 

 88-1571 Betty Bendall 98941 .
 

 88-1574 Kyle G. Flowers 59801
 

 88-1575 Carolyn Williams 38892
 

 88-1576 Marie Poindexter 96819
 

 88-1577 Helen Baker 37539
 

 88-1579 Jessica Miller 263670
 

 88-1580 Delores Delgado 236624
 

 88-1581 Gertrude Dubois 271508
 

 88-1582 Kaylyn B. Mallette 110419
 

 88-1583 Peggy L. Cooke 111610
 

 88-1584 Dorothy Williams 96914
 

 88-1585 Mercile M. Julien 56184
 

 88-1586 Dorothy J. Perry 53376
 

 88-1588 Gladys Morgan 168713
 

 88-1589 Carmen Ruiz 169111
 

 88-1590 Ann B. Seymour 125440
 

 88-1591 Janra H. Steverson 88149
 

 88-1592 Lisabeth L. Maguire 188241
 

 
 *1099
 
 APPEAL NUMBER APPELLANT DALKON SHIELD NUMBER
 

 88-1593 Patricia Casteel 249744
 

 88-1595 Connie Thome 49866
 

 88-1596 Darlene Lewis 199744
 

 88-1598 Joan Rogers 130551
 

 88-1599 Pat Mitchell 119192
 

 88-1600 Shirley Marcus 246155
 

 88-1603 Elizabeth Levendos 301949
 

 88-1604 Mary Wallace 202383
 

 88-1605 Geneva Allen 313056
 

 88-1701 Carolyn J. Williams 151323
 

 88-1702 Denise Boone 273023
 

 [1]
 

 . 11 U.S.C. §§ 101,
 
 et seq.
 
 See addendum for listing of parties and Daikon Shield claim numbers.
 

 [2]
 

 . The Court had approved earlier, on November 13, 1985, a notice in which the first step would be the filing of a written "notice of [her] intention to file a claim” and secondly, that the person so filing would be sent a form of "Proof of Claim and additional instructions.” However, the Court reconsidered, and substituted the words "claim” and "questionnaire" for the words "Notice of Intention to File a Claim" and “Proof of Claim” in its order of November 21. Such substitution of terms was intended to simplify the notice and in essence to reiterate the instructions given in the earlier notice approved in the Court’s order of November 13.
 

 [3]
 

 . Actually the order referred to was entered on November 21 and not November 22, 1985, the date used in this later order of the district court.
 

 [4]
 

 . Since, as we later state, the questionnaire was not incident in the discovery process but an essential part of the requirement of a “Proof of Claim,”
 
 Wilson,
 
 which involved merely a discovery violation, is inapposite.