In re STANDARD INSULATIONS, INC., Debtor.

Bankruptcy No. 86–03413–KMS–11.

United States Bankruptcy Court, W.D. Missouri.

April 13, 1992.

948

Louis S. Robles, Miami, Fla., David T. Kupfer, Los Angeles, Cal., Catherine J. Brown, Saginaw, Mich., Scott R. Bickford, New Orleans, La., John E. Williams, Jr., Houston, Tex., for claimants.

James Borthwick, Kansas City, Mo., for Employers Reinsurance.

Edward E. Schmitt, Kansas City, Mo., for National Union.

John L. Hayob, Kansas City, Mo., for U.S. Fire Ins.

David Welte, Kansas City, Mo., for debtor.

## ORDER AND MEMORANDUM OPINION

KAREN M. SEE, Bankruptcy Judge.

Two issues are pending: 1) whether the bankruptcy court has jurisdiction to make threshold rulings allowing and disallowing personal injury and wrongful death claims; and 2) whether untimely claims should be disallowed. The court has jurisdiction and may enter final orders under 28 U.S.C. §§ 1334(b) and 157(b)(2).

### I. INTRODUCTION

Debtor Standard Insulations, a small company, manufactured, distributed and installed asbestos insulation products of its own and other companies in several areas of the country. Debtor, a defendant in thousands of suits, terminated operations in 1986 due to overwhelming litigation expenses, and filed a liquidating Chapter 11 case. On October 10, 1986, the court set a bar date of November 6, 1991 for all personal injury claims to be filed. In 1987 the court appointed a Claimants Committee to represent the collective interests of personal injury claimants.

There were 23,532 timely claims alleging injury from exposure to Standard asbestos products. In addition, about 1,000 untimely claims have been filed. Despite the ex-

tended filing period, most claims were filed on or within days of the bar date.

National Union Fire Insurance Co., Employer's Reinsurance Co., and U.S. Fire Insurance Co., indemnified debtor against personal injuries during a combined period from October 25, 1966 to October 31, 1976. The insurers are responsible for payment of allowed, liquidated claims that arose during the coverage period. The estate's primary asset is $14,000,000 of insurance.[1]

By Order dated April 17, 1987, the court approved a special claims handling procedure, and a form for all personal injury claims which required claimants to supply information identifying asbestos products claimants were exposed to and dates and places of exposure. The claim form required that claimants

> *must file a Proof of Claim on or before November 6, 1991. To file a claim, you must complete this Proof of Claim form even if you have previously filed a lawsuit or claim against Standard Insulations or any other asbestos product manufacturer. Your claim will be considered only if you follow these procedures and file a completed Proof of Claim form. Failure to complete the mandatory sections of the form may result in the rejection of your claim.* (Emphasis in original.)

The insurers filed a Motion to Determine Claims Disallowance Procedure for a ruling on this court's jurisdiction to dismiss defective personal injury claims. They are reviewing claims to prepare objections based on: 1) untimely claims; 2) failure to properly complete the mandatory claim form; 3) claims that on the face show no exposure to debtor's products, based on product identification and job-site information supplied by claimants; and 4) claims showing exposure outside the coverage period.

## II. PARTIES IN INTEREST

■ The Claimants Committee contends the insurers lack standing to object to personal injury claims, and that the insurers'

interest is adverse to the estate because they are seeking summary judgment relieving them from liability for payment of claims. A "party in interest" may raise and may be heard on any issue. 11 U.S.C. § 1109(b). A filed claim is deemed allowed unless a party in interest objects. § 502(a). The "phrase 'parties in interest' applies to those who have some interest in the assets of the debtor being administered in the case." 3 L. King, *Collier on Bankruptcy,* ¶ 502.01[2], at 502–13 (15th Ed.1991). The Code does not define the term, but it is not limited to the examples in § 1109(b). In similar cases, "party in interest" was broadly construed to permit future personal injury claimants to be heard in asbestos manufacturers' bankruptcy cases. *In re Amatex,* 755 F.2d 1034, 1042 (3d Cir.1985); *In re Johns–Manville Corp.,* 36 B.R. 743, 747 (Bankr.S.D.N.Y.1984), *aff'd,* 52 B.R. 940 (S.D.N.Y.1985). The court must inquire "whether the prospective party in interest has a sufficient stake in the proceeding so as to require representation." *Amatex,* 755 F.2d at 1042.

Debtor's insurance is the only asset of consequence. The insurers are responsible for payment of injury claims caused by exposure to debtor's products during covered periods. The insurers are parties in interest under 11 U.S.C. §§ 1109(b) and 502(a), and have standing to object to claims against the estate.

## III. JURISDICTION OVER PERSONAL INJURY CLAIMS

■ Before the number of valid claims can be ascertained, the bankruptcy court must determine whether it has jurisdiction to disallow personal injury claims that are invalid as a matter of law, or whether the district court must disallow such claims.

The insurers contend: the court has authority under 11 U.S.C. § 105 to disallow claims that fail to comply with the mandatory Claims Handling Procedure; the procedure is a core proceeding as defined in 28 U.S.C. § 157(b)(2); and neither 28 U.S.C.

---

1. Assuming policy limits were paid out, if all claims were allowed pro rata, each would receive only a modest distribution, estimated at

$500, after payment of administrative expenses, including fees sought by the Claimant's Committee counsel.

§ 157(b)(2)(O) nor § 157(b)(5) requires referral of personal injury claims to district court for a threshold determination of disallowance.

The Committee contends: a procedural ruling which bars a defective injury or death claim is beyond § 157(b)(5) jurisdiction limitations because it is equivalent to liquidation; and personal injury claimants are not included within bankruptcy jurisdiction over the claims allowance process because they have not voluntarily involved themselves with debtor in the same way as creditors with claims arising from commercial relationships.

The court holds: the claims allowance process is separate and distinct from liquidation of personal injury claims for purposes of distribution; the bankruptcy court may conduct a threshold inquiry on the limited issue of whether personal injury claimants have allowable claims, so long as the court stops short of liquidating those claims it allows; a jury trial is not required in personal injury claims allowance proceedings unless there is a genuine factual dispute; and eventually all allowable personal injury claims must be sent to district court or the court where the claim arose for liquidation, unless the parties agree otherwise.[2]

## IV. JURY TRIALS IN CLAIMS ALLOWANCE PROCEEDINGS

The jurisdiction of the bankruptcy court is governed by 28 U.S.C. § 157. Bankruptcy judges have authority to hear and determine all cases arising under Title 11 and core proceedings. § 157(b)(1). Core proceedings, defined in § 157(b)(2)(B), include:

> allowance or disallowance of claims ... and estimation of claims or interests for the purposes of confirming a plan ... but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11.

■ All personal injury claims shall be tried in the district court in which the bankruptcy is pending, or where the claim arose. § 157(b)(5). Title 11 does "not affect any right to trial by jury that an individual has under applicable nonbankruptcy law with regard to personal injury or wrongful death tort claims." 28 U.S.C. 1411(a). The scant legislative history is of little help in divining the intended scope of bankruptcy court jurisdiction over personal injury claims in claims allowance proceedings. The court concludes from the statutory language that jury trials are not required for personal injury claims at the claims allowance stage.

The inquiry now shifts to whether this conclusion comports with the Seventh Amendment. The claims allowance process is an integral component of the court's equitable power to restructure debtor-creditor relationships. *Langenkamp v. Culp,* — U.S. ——, 111 S.Ct. 330, 331, 112 L.Ed.2d 343 (1990). A chief purpose of the bankruptcy laws is to secure a prompt and effectual administration and settlement of debtor's estate within a limited period. *Katchen v. Landy,* 382 U.S. 323, 328, 86 S.Ct. 467, 472, 15 L.Ed.2d 391 (1966). The power to allow, disallow and reconsider claims is of basic importance in administration of the bankruptcy estate.

■ Unless an action involves "public rights," parties cannot be deprived of the Seventh Amendment guarantee of a jury trial. *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 109 S.Ct. 2782, 2796, 106 L.Ed.2d 26 (1989). The test for determining a public right in cases not arising between the government and others is whether the statutory right is closely integrated with a federal regulatory scheme that Congress has power to enact. 109 S.Ct. at 2797. Although stopping short of declaring restructuring of debtor-creditor relations a public right, the Supreme Court noted that "restructuring of debtor-creditor relations, which is at the core of the federal

---

**2.** The parties agree that the Multi–District Litigation Order excludes asbestos personal injury claims in bankruptcy cases from transfer to the District Court for consolidated discovery and pretrial matters. *In re Asbestos Product Liability Litigation (No. VI).* The District Court intended that procedural matters be addressed in bankruptcy courts.

bankruptcy power, must be distinguished from the adjudication of state-created private rights." *Granfinanciera,* 109 S.Ct. at 2798 n. 12, *quoting Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 71, 102 S.Ct. 2858, 2871, 73 L.Ed.2d 598 (1982).

There "is no constitutional right to a jury trial for determination of objections to claims." *Katchen,* 86 S.Ct. at 476. In *Langenkamp,* 111 S.Ct. at 331, the Supreme Court, in its most recent discussion of jury trial rights in fraudulent conveyance and preference actions, explained that by filing a claim

> against a bankruptcy estate the creditor triggers the process of "allowance and disallowance of claims," thereby subjecting himself to the bankruptcy court's equitable powers ... As such there is no Seventh Amendment right to a jury trial (emphasis added).

■ The Supreme Court cases indicate a jury trial is not required for an action at law if it is closely intertwined with claims allowance proceedings unique to bankruptcy law. It is undisputed that personal injury claimants are entitled to a jury to liquidate an allowed claim. The limited claims allowance procedure within this bankruptcy case is an equitable proceeding. The Supreme Court recognized that where both legal and equitable issues are present there might be situations in which the court could resolve the equitable claim first even though the results might dispose of the legal claim. *Katchen,* 382 U.S. at 339, 86 S.Ct. at 478, *citing Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959); and *Dairy Queen, Inc. v. Wood,* 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962). The present case is within the situation contemplated in *Katchen* because a statutory scheme exists for allowance of claims by the bankruptcy court. The court must first determine whether the claim is allowable before it can be liquidated by jury trial against estate assets.

The Supreme Court's classification of claims allowance proceedings as equitable actions suggests the bankruptcy court may initially allow or disallow any claim, including defective injury and death claims, under its core jurisdiction. Other courts are split as to whether the bankruptcy court may rule dispositive motions to disallow personal injury claims. *See In re Hillsborough Holdings Corp.,* 123 B.R. 1004 (Bankr.M.D.Fla.1990); *In re Chateaugay,* 111 B.R. 67 (Bankr.S.D.N.Y.1990); *In re Aquaslide N' Dive Corp.,* 85 B.R. 545 (9th Cir.B.A.P. 1987) (all finding jurisdiction to disallow claims); *contra, Pettibone Corp. v. Easley,* 935 F.2d 120 (7th Cir.1991); *In re UNR Indus., Inc.,* 74 B.R. 146 (N.D.Ill. 1987).

*In re Johns–Manville Corp.,* 45 B.R. 823 (S.D.N.Y.1984), one of the first bankruptcy cases to discuss the scope of jurisdiction over injury or death claims, involved thousands of asbestos claims. It held claimants were not entitled to immediate withdrawal and liquidation of claims because a bankruptcy court may estimate personal injury claims to determine plan feasibility under § 157(b)(2)(B). "Nothing in the Code or 1984 Act indicates that personal injury and wrongful death claims are to be treated any differently than any other unliquidated claims for purposes other than distribution." *Id.* at 827. The court also held the bankruptcy court could liquidate or estimate a claim for purposes of allowance if it entered findings and conclusions subject to de novo review. The opinion left open the question of bankruptcy jurisdiction to rule objections to injury claims for purposes of disallowance. Subsequent opinions indicate that bankruptcy courts may disallow personal injury claims by summary judgment or other dispositive motion. *Hillsborough, supra; Chateaugay, supra; Aquaslide, supra.*

*Chateaugay,* cited by the insurers, is on point. Debtors objected to 32 claims. *Chateaugay* held the bankruptcy court had subject matter jurisdiction to make a threshold determination for allowance or disallowance of personal injury claims allegedly 1) asserted against the wrong defendant; and 2) barred as a matter of law by the government contractor defense. 111 B.R. 67, 78. It rejected arguments

that if bankruptcy courts cannot try injury and death cases, "then surely they do not have the authority to dispose of such cases summarily by 'objection' or summary judgment motion." *Id.* at 73. *Chateaugay* distinguished allowance of claims from liquidation or estimation of claims for distribution. The court reasoned that allowance or disallowance of claims in a personal injury suit under 28 U.S.C. § 157(b)(2)(B) is a core proceeding within bankruptcy jurisdiction. *Id.* at 70–77.

The court narrowly defined liquidation or estimation as determining the distribution payable to such claimants. It found that while § 157(b)(2)(B) limits bankruptcy court authority to liquidate or estimate personal injury claims for purposes of distribution, it did not prevent the court from disallowing claims if they had no basis at law. *Id.* at 74. The court stated that

> simply because the underlying basis of a claim sounds in personal injury tort or wrongful death does not deprive the bankruptcy courts of jurisdiction to make an initial determination on issues that are only tangentially related to the actual physical event causing the personal injury tort or wrongful death aspect of the claim.

*Id.* at 75–76. The same logic applies to jurisdiction to determine, as a threshold matter, whether a claim is barred by a bar date for filing claims, res judicata, payment, release, discharge in bankruptcy or any other basis that tends to negate the existence of a claim. *Id.* at 75.

*Chateaugay's* rationale was supported by *In re Aquaslide N' Dive Corp.*, 85 B.R. 545, 548 (9th Cir.BAP 1987), which upheld a bankruptcy court decision to treat debtor's objection as a summary judgment motion and disallow a personal injury claim against a manufacturer of pool sliding boards based on evidence the debtor did not design, manufacture, sell or distribute the slide which caused claimant's injuries. *Aquaslide* also based its decision on the bankruptcy court's authority to estimate claims for purposes of confirming a Chapter 11 plan. Both *Aquaslide* and *Chateaugay* construe § 157 to permit the bankruptcy court to make dispositive rulings on personal injury claims as part of its jurisdiction over allowance and disallowance of claims.

The cases cited by the Committee are not persuasive. In *UNR*, 74 B.R. 146, debtor objected to 20 claims of persons allegedly exposed to asbestos in a shipyard. The district court withdrew reference of the objections from the bankruptcy court, but expressly reserved the jurisdiction question. UNR moved for summary judgment against a single claimant to test viability of the government contractor defense. The court held UNR's summary judgment motion was a non-core proceeding that must be heard by the district court under §§ 157(b)(2)(B) and (O). The court rejected UNR's argument that it sought disallowance for purposes of confirming the plan, and found the summary judgment motion directly impacted the personal injury claim because summary judgment would both disallow the claim and bind the claimant for purposes of receiving a distribution from the estate. *Id.* at 148. *See also, Pettibone Corp. v. Easley*, 935 F.2d 120 (7th Cir. 1991).

A significant distinction exists between the present case and *UNR*, which noted it was not "setting thousands of personal injury cases for trial. Rather a single summary judgment is at issue." *Id.* at 149. In contrast, if this court lacks jurisdiction to dispose of defective injury claims, it will be faced with sending 25,000 claims for trial in the district court or courts where claims arose. The insurers, based on random sampling of claims, contend 80% may be objectionable. That figure may be inflated, but it demonstrates the magnitude of a decision to send all defective claims to the district court or elsewhere to initially determine whether a claim is allowable. To flood other courts with 25,000 suits does not serve the interests of claimants, the insurers, the debtor, or the courts.

■ Bankruptcy jurisdiction over the claims allowance process is distinct from liquidation for purposes of distribution. A claim is liquidated when it is capable of ready determination of how much is due.

*In re Loya,* 123 B.R. 338, 341 (9th Cir. B.A.P. 1991). Liquidation involves weighing evidence of liability and damages to determine with certainty a monetary sum sufficient to compensate a claimant for injuries. In this case, the court is only evaluating the validity of a claim against the estate, and not determining the extent or value of injuries. Allowance of a claim is not identical to liquidation of a claim for distribution.

From the plain language in § 157, the bankruptcy court's jurisdiction to reduce a personal injury claim to a dollar value is limited, but it does not appear that § 157(b)(2)(B) is intended to limit the authority to determine the validity of claims against the estate. "[I]f a claim is not allowed because it is barred by the statute of limitations, there is undeniably no need for it to be liquidated or estimated." *Chateaugay,* 111 B.R. at 75.

### V. CLAIMS DISALLOWANCE PROCEDURES

A duly executed and filed claim constitutes prima facie evidence of the validity and amount of the claim. Bankruptcy Rule 3001(f). A claim is not presumed valid under Rule 3001(f) unless the claimant meets any necessary conditions precedent to granting the claim. *In re Baker,* 49 B.R. 240, 242 (E.D.Pa.1985). In this case, completion and timely filing of the court-approved claim form is a prerequisite to allowing personal injury and wrongful death claims. The court holds that core jurisdiction over the claims allowance procedure includes not only authority to disallow claims that are untimely or in improper form, but also to rule objections based on failure to identify the place or date of exposure to products manufactured, supplied or distributed by debtor.

Evidentiary standards for summary judgment provide guidance in determining whether there is a genuine dispute of material fact for claims allowance proceedings. Summary judgment is proper if "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine

issue as to any material fact and that the moving party is entitled to judgment as a matter of law." F.R.C.P. 56(c).

Summary judgment is similar to the claims allowance process in that one purpose is to isolate and dispose of factually unsupported claims. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). *Celotex* is especially relevant because it involved a plaintiff alleging wrongful death against an asbestos manufacturer. In interrogatory answers, plaintiff failed to identify witnesses who could testify about decedent's exposure to Celotex products. The Supreme Court found summary judgment was proper on remand if plaintiff was unable to produce sufficient evidence supporting allegations in the petition that the decedent had been exposed to Celotex products:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Id.,* 106 S.Ct. at 2552. Movant satisfies its burden by producing evidence showing the absence of evidence to support the nonmovant's case. 106 S.Ct. at 2554. Respondent cannot raise an issue of fact simply by relying on allegations in the complaint or an unsupported, conclusory affidavit. *Aquaslide,* 85 B.R. at 549. There is no genuine issue of material fact "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

In an asbestos exposure case, summary judgment is appropriate where plaintiff is unable to supply product brand names or other evidence connecting defendants' products with the alleged injuries.

*Thompson v. Johns–Manville Corp.,* 714 F.2d 581, 582 (5th Cir.1983), *cert. denied,* 465 U.S. 1102, 104 S.Ct. 1598, 80 L.Ed.2d 129 (1984). For example, under Missouri law, a toxic tort plaintiff proves causation in fact by showing that defendant was responsible for the etiologic agent of the disease diagnosed in plaintiff. *Zafft v. Eli Lilly & Co.,* 676 S.W.2d 241 (Mo. banc 1984). A plaintiff exposed to asbestos products of several manufacturers proves causation in fact by showing "the product of each defendant sought to be held liable was a 'substantial factor' in causing the harm." *Hagen v. Celotex Corp.,* 816 S.W.2d 667, 670 (Mo. banc 1991). Other states have different rules for determining causation. Claims that fail to demonstrate causation under applicable state law are invalid against debtor as a matter of both bankruptcy and tort law. Failure to produce any evidence of exposure during the period of coverage, as required by the claim form herein, demonstrates an absence of any genuine issue of material fact for purposes of disallowing claims against insurance assets.

There is a two-step process in this case. If claims are not allowable against the insurers because exposure to debtor's products was outside covered periods, claimants may still have claims against debtor. First, the court must decide if claimant has a facially valid claim against the estate by ruling objections to timeliness and defective claim forms. Second, the court must determine whether an allowable claim involved exposure during covered periods and can be paid from insurance. For practical purposes, a claim disallowed against the insurers is worthless because the coverage is the only asset of consequence.

As a practical matter, until this court can determine with some certainty the number of allowable claims, the court cannot effectively administer the case and it will remain at a virtual standstill. Insurers are not obligated to indemnify the estate until valid claims resulting from asbestos exposure during the covered periods are established.

The claims allowance process must proceed before the court can ascertain the number of valid claims and the extent of the insurers' liability. In that respect, this situation is similar to estimating personal injury claims for determining feasibility of a plan. In both situations, the court initially determines whether the personal injury claim is payable at all from estate assets in order to assess the total amount of assets that will be available to pay creditors under the plan.

■ As a matter of judicial economy the bankruptcy court must have authority to dispose of defective personal injury claims. There is little sense in claimants' argument that the district court is required to set trials now for 25,000 personal injury claimants to determine preliminary matters regarding whether their claims can proceed to liquidation. If a personal injury claim is invalid as a matter of law or procedure, there is nothing for the district court to liquidate. A personal injury claimant must comply with the Code, Bankruptcy Rules, and court orders for claims handling procedures before there is a valid bankruptcy claim ripe for liquidation by the district court or court where the claim arose.

■ Objections involving genuine factual disputes, such as to product identification or exposure, may be referred to the district court or the courts where the claims arose.

## VI. LATE–FILED CLAIMS

The second issue is whether untimely claims should be allowed. Although the filing period was five years (due to the number and nature of claims and the fact that asbestos-related medical conditions take time to manifest), and the bar date was widely publicized,[3] almost all personal injury claims were filed on or within days of the November 6, 1991 bar date. As of the hearing resulting in this order, 937 claims had been filed after the bar date. Additional late claims have since been filed.

**3.** The bar date notice was sent to each party and attorney, published in newspapers, and further circulated in media such as newsletters for asbestos plaintiffs' attorneys.

Debtor objected to late-filed claims. Claimants argued that: 1) failure to timely file claims was excusable neglect; 2) the claims are amendments to informal claims made before the bar date based on counsel's participation in the bankruptcy case; and 3) in the interests of justice, the court should exercise equitable power to relieve claimants from the bar date.

■ The court finds no equitable basis to permit claims filed after the bar date. Claimants have not alleged lack of knowledge of the bar date. They had five years notice and ample opportunity to file claims. Unless claimants can show excusable neglect or satisfy requirements for informal proofs of claim, untimely claims must be disallowed. Although persons with legitimate claims may be precluded from sharing in estate assets, strict enforcement of the bankruptcy bar date is no more unfair than application of a statute of limitations to foreclose a tort claim. *In re Eagle–Picher Indus., Inc.*, 137 B.R. 679 (S.D.Ohio 1992).

## VII. EXCUSABLE NEGLECT

A creditor with a disputed, contingent or unliquidated claim must file a proof of claim. 11 U.S.C. § 1111(a); Bankruptcy Rule 3003(c)(2); *In re A.H. Robins Co.*, 862 F.2d 1092 (4th Cir.1988). A claim is deemed allowed unless a party in interest objects. 11 U.S.C. § 502. In Chapter 11, the time for filing a claim is established by Bankruptcy Rule 3003(c). Creditors may file claims within the time fixed by the court, and the court may extend the time "for cause shown."

The Eighth Circuit has not specifically addressed the proper analysis for allowance of late claims, but the weight of authority holds that a late filed claim in a Chapter 11 case may be allowed only upon a showing of excusable neglect, and the bankruptcy court cannot rely on general equitable principles to extend the deadline. *In re Analytical Sys., Inc.*, 933 F.2d 939, 942 (11th Cir.1991); *In re Vertientes, Ltd.*, 845 F.2d 57, 60 (3d Cir.1988); *Maressa v. A.H. Robins Co.*, 839 F.2d 220, 221 (4th Cir.1988), *cert. denied*, 488 U.S. 826, 109

S.Ct. 76, 102 L.Ed.2d 53; *In re South Atlantic Fin. Corp.*, 767 F.2d 814, 817 (11th Cir.1985), *cert. denied*, 475 U.S. 1015, 106 S.Ct. 1197, 89 L.Ed.2d 311 (1986); *contra*, *Matter of Unroe*, 937 F.2d 346 (7th Cir. 1991).

If an act is required to be done within a specific period established by the Bankruptcy Rules, the court in its discretion may "on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect." Bankruptcy Rule 9006(b)(1).

The Eighth Circuit has adopted the majority definition of excusable neglect as "failure to timely perform a duty due to circumstances which are beyond the reasonable control of the person whose duty it was to perform." *Hanson v. First Bank of South Dakota*, 828 F.2d 1310, 1314 (8th Cir.1987). *Hanson* held Chapter 11 ballots, filed 14 days late due to employee turnover, did not constitute excusable neglect because any delay was due to the creditor's lack of diligence. Similarly, the Eighth Circuit narrowly defines excusable neglect in late-filed appeals or appellate briefs. *In re Harlow Fay, Inc.*, 951 F.2d 175 (8th Cir.1991); *Jacobson v. Nielsen*, 932 F.2d 1272 (8th Cir.1991). Excusability will not be found if "failure to timely file an appeal is caused by palpable oversight, administrative or clerical errors by the attorney or the attorney's staff, [or] an attorney's busy schedule...." *Vogelsang v. Patterson Dental Co.*, 904 F.2d 427, 431 (8th Cir. 1990). Courts are more willing to find excusable neglect if the creditor is diligent and the late filing was due to inadequate notice or events beyond the creditor's control. *Hanson*, 828 F.2d at 1314.

Claimants argue that in addition to claimant's control the court should consider: 1) whether debtor was prejudiced; 2) length of delay and impact on efficient court administration; 3) whether the delay was beyond the reasonable control of the person whose duty it was to perform; 4) whether claimant acted in good faith; and 5) whether the client should be penalized for coun-

sel's mistake or neglect. *In re Joiner,* 93 B.R. 130 (Bankr.N.D.Ohio 1988).

The court does not find support in the Eighth Circuit for this broader definition of excusable neglect. *Hanson* declined to consider the prejudicial effect of the late filing in deciding whether excusable neglect existed. 828 F.2d at 1315, n. 8. *Hanson,* citing *In re South Atlantic Fin. Corp.,* 767 F.2d 814, 818 (11th Cir.1985), noted that the plain meaning of Bankruptcy Rule 9006(b) focuses on movant's actions, and does not address any effect an extension might have on debtor or other parties in the bankruptcy.

 Mailing a claim is not equivalent to filing. *Chrysler Motors Corp. v. Schneiderman,* 940 F.2d 911, 914 (3d Cir.1991), held a claim was untimely where it was mailed in August but was never filed before the November bar date. The Third Circuit rejected the argument that timely mailing creates a rebuttable presumption of filing, and emphasized that time limits in the Bankruptcy Rules serve "dual purposes of finality and certainty." *Id.* at 914, *quoting, Taylor v. Freeland & Kronz,* 938 F.2d 420, 425 (3d Cir.1991). The court noted a creditor could protect itself with minimal expense by certified mail with a return receipt or over-the-counter filing with the clerk.

*Chrysler* also held counsel's conduct did not constitute excusable neglect because he prepared the claim and mailed it to the proper address far in advance of the bar date. "[A]ssuming we could consider the conduct of the postal authorities or ... [bankruptcy clerk] in an excusable neglect analysis, Chrysler's position would not be helped, as we have no idea what happened to the envelope ... after it was mailed." *Id.* at 915. The court, 940 F.2d at 916, commented that if Chrysler were allowed an extension

> to file its claim simply because it ... timely mailed it, as a *de facto* matter we would be adopting the rebuttable presumption rule we have already rejected, albeit with a different label. This would be because an "excusable neglect" extension would simply replace the rebuttable

presumption of delivery when a proper mailing was established and the claim was not received.

In the present case, claims are untimely even though they were postmarked on or before the November 6, 1991 bar date. Four late claims (Group A), mailed on November 4, were not the result of excusable neglect. Common sense dictates that regular mail dispatched from Michigan may take more than two days to reach Kansas City, Missouri.

 Group B claimants contend that failure to timely receive one-day mail delivery is excusable neglect. *In re Trail's End Lodge, Inc.,* 54 B.R. 898, 902 (Bankr. D.Vt.1985). Late mail constitutes excusable neglect only if the delay is wholly outside the creditor's control. *Hanson,* 828 F.2d at 1315, n. 8. There was no excusable neglect for claims received two days after the bar date from a Texas firm which represents several thousand claimants in this case. Four hundred claims were sent by Federal Express on November 5 for overnight delivery. The court received most on the bar date, November 6, but 86 claims did not arrive until November 8. Despite five years notice of the bar date, counsel consciously chose to wait until the eleventh hour and to use a delivery procedure that depended on overnight service with no margin for error. The delay was not wholly outside claimants' control. The 86 claims are disallowed. Their remedy is against Federal Express.

 The 66 Group C claims and 774 Group D claims were not the subject of excusable neglect. Counsel, with five years notice of the bar date, said they failed to file claims before the bar date at least in part because of reliance on statements of employees at Payne & Jones, counsel for the Claimants Committee. Regardless of any such statements, counsel was obligated to verify filing requirements before the bar date. Reliance on misinformation, or ignorance or confusion on the law or rules, is not excusable neglect. *In re Oakton Beach & Tennis Club Real Estate Ltd. Partnership,* 9 B.R. 201

(Bankr.E.D.Wis.1981) (reliance on misinformation from Clerk's Office on filing of claim is not excusable neglect). If failure to timely file claims results from a chosen course of action, and circumstances were within the party's reasonable control, then as a general rule, courts will not grant relief. *Id.* at 205. Given their alleged confusion about the deadline, counsel should not have waited until the bar date to submit claims. The decision to file claims at the last minute was a result of a "conscious selection of a delivery procedure … rather than neglectful oversight." *Chrysler*, 940 F.2d at 915.

Not one claimant requested an extension of the deadline. Local Bankruptcy Rule 3.002 provides that "[i]f before the bar date a creditor files and serves a notice stating why it is unable to file or amend a claim by the bar date, it shall have one 45 day extension without motion or order." Counsel failed to avail themselves of a safeguard provided in the Local Rules that would have prevented their untimely claims from being barred.

## VIII. AMENDMENTS TO INFORMAL CLAIMS

Groups B, C and D contend late claims should be considered amendments to timely informal claims because their attorneys were on the Claimants Committee. If a claimant fails to meet formal requirements for a claim, the claim may still be allowed as an informal proof of claim. *Vertientes*, 845 F.2d 57. The general rule is that an informal claim must apprise the court as to the existence, nature and amount of the claim (if ascertainable) and clearly state the creditor's intention to hold the debtor liable. *In re Charter Co.*, 876 F.2d 861, 863 (11th Cir.1989); *In re Haugen Constr. Serv. Inc.*, 876 F.2d 681, 682 (8th Cir.1989). Mere notice or knowledge of a claim is not enough to constitute an informal claim. *In re Charter Co.*, 876 F.2d 861 (11th Cir.1989); *In re A.H. Robins Co., Inc.*, 862 F.2d 1092 (4th Cir.1988); *In re South Atlantic Fin. Corp.*, 767 F.2d 814 (11th Cir.1985); *In re Int'l Horizons, Inc.*, 751 F.2d 1213 (11th Cir.1985); *Wilkens v. Simon Bros.*, 731 F.2d 462 (7th Cir.1984).

In the Eighth Circuit, if "the record made in the statutory period, *formal* or *informal*, disclosed facts showing an assertion of a claim against the estate and an intention by the claimant to share in its assets, there would be a basis for the proposed amendment." *Haugen*, 876 F.2d at 682 (letter to U.S. trustee, explicitly stating nature and amount of claim and desire to pursue claim, was amendable informal claim). An informal claim does not necessarily have to be filed with the bankruptcy court, and intent to assert a claim may be inferred by the creditor's active participation throughout the bankruptcy proceedings. *Id.*

*Haugen* left unanswered the question of whether mere oral statements of counsel to the debtor or other parties are sufficient to constitute an informal proof of claim. Oral statements of intent to make a claim do not give rise to an informal claim. *In re Pigott*, 684 F.2d 239, 244 (3d Cir.1982). Generally, the court or debtor's mere knowledge of the claim is insufficient to establish an informal claim. *Vertientes*, 845 F.2d at 60; *South Atlantic Fin. Corp.*, 767 F.2d at 819, *cert. denied*, 475 U.S. 1015, 106 S.Ct. 1197, 89 L.Ed.2d 311 (1986); *In re Square Shooter, Inc.*, 130 B.R. 108 (Bankr.S.D.Ala.1991). While not directly addressing this issue, *Haugen* cited with approval a case which holds there must be "some written instrument which brings to the attention of the court the nature and amount of the claim." *In re Franciscan Vineyards, Inc.*, 597 F.2d 181, 183 (9th Cir.1979) (per curiam), *cert. denied*, 445 U.S. 915, 100 S.Ct. 1274, 63 L.Ed.2d 598 (1980).

Claimants cite cases holding that timely filed documentary evidence constitutes an informal claim that can be amended by a formal claim after the bar date. *Sun Basin Lumber Co. v. United States*, 432 F.2d 48 (9th Cir.1970) (per curiam); *In re Basche–Sage Hardware Co.*, 56 B.R. 3 (Bankr.D.Ore.1985); *Matter of Pizza of Hawaii*, 40 B.R. 1014 (D.Haw.1984). An important fact common to all three cases is that the documents construed as informal

claims specifically identified a single credi-tor. In contrast, in this case spanning more than five years, involving 25,000 claimants and dozens of lawyers, the court has no way of determining, from the record existing before the bar date, either the number of claimants represented by an at-torney on the Committee, or the identities of claimants whose claims were later un-timely filed.

This court construes *Haugen* to require some documentation demonstrating exist-ence of the claim before the court can find an informal claim. The document need not be formally filed, but it must, at a mini-mum, put the court or debtor on notice of claimant's identity, the nature and amount of the claim, and the intention to hold the estate liable. Participation on the Commit-tee by counsel representing claimants only provides evidence of counsel's intent to as-sert unidentified personal injury claims against debtor's estate. In this case, coun-sel provided no formal or informal docu-mentary evidence that alerted the court or debtor before the bar date of identities of individual claimants.

Claimants failed to satisfy the Eighth Circuit's liberal test for informal proofs of claim. If untimely claims are allowed as amendments to informal claims based sole-ly on counsel's oral representations to oth-er parties or general participation on the Committee, the practical result would be to eliminate the bar date for future untimely claims submitted by counsel on the Com-mittee.

## IV. CONCLUSION

The bankruptcy court has subject matter jurisdiction to make threshold determina-tions on allowance of personal injury claims, so long as valid claims retain the right to ultimate liquidation by jury trial in the district court or where the claim arose. These claims were not filed late as a result of excusable neglect and do not qualify as amendments to informal claims. Accord-ingly, the claims in Appendix A are disal-lowed. This order does not decide whether untimely claimants whose injuries were di-agnosed after the bar date have allowable claims. That issue is not pending.