## In re HERMAN'S SPORTING GOODS, INC., Debtor.

**Bankruptcy No. 93–31529.**

United States Bankruptcy Court, D. New Jersey.

April 18, 1994.

Corey Lipoff, Jones, Day, Reavis & Pogue, New York City, Elizabeth S. Kardos, Crummy, Del Deo, Dolan, Griffinger & Vecchione,

Newark, NJ, for Herman's Sporting Goods, Inc., debtor.

Richard M. Meth, Friedman Siegelbaum, Roseland, NJ, Lawrence C. Gottlieb, Siegel Sommers & Schwartz, New York City, for Official Committee of Unsecured Creditors.

Karen L. Gilman, Wolff & Samson, Roseland, NJ, for Alexander Summer.

## OPINION

WILLIAM H. GINDIN, Chief Judge.

### PROCEDURAL BACKGROUND

This matter comes before the court on the motion of Alexander Summer, Jr. ("Summer" or "movant"), a landlord of Herman's Sporting Goods, Inc. ("debtor"), for an Extension of Time for Filing Lease Rejection Claim pursuant to Federal Rule of Bankruptcy 9006(b). Debtor objected to the motion and this court held a hearing on February 14, 1994. This court has jurisdiction over the matter pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(b)(1). This is a core matter under §§ 157(b)(2)(A), (B), and (O).

### STATEMENT OF FACTS

Debtor operates a sporting goods chain through a variety of leased facilities. One such facility, is Milik warehouse located in New Jersey. Debtor leased Milik warehouse from movant, Alexander Summer, Jr., pursuant to a pre-petition lease in effect at the commencement of the case (the "Milik lease").

Debtor filed with this court a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on March 15, 1993. In October 1993, it became apparent that debtor would reject the Milik lease. Summer and debtor then commenced negotiations over Summer's potential lease rejection claim which culminated in an offer by debtor for a cash settlement of twenty-five (25) to thirty (30) cents on the dollar for projected damages.

On December 6, 1993, this court entered an order approving debtor's rejection of the Milik lease. The rejection was effective that date. Although the order was entitled "order approving rejection of lease", the last paragraph of the order provided that any claims for lease rejection damages had to be filed within thirty (30) days of the rejection, on or before January 5, 1994.[1] Summer's counsel was present at the hearing and took a copy of the order. Counsel and staff mistakenly believed that the bar date for filing lease rejection claim was thirty (30) days after receipt of the order. The proof of claim was filed nine days late on January 14, 1994.[2] A motion to extend the time for filing lease rejection claims was filed on January 24, 1994 ("motion to extend").

Summer alleges that it has suffered seven hundred thousand dollars ($700,000) in damages as a result of debtor's rejection of the lease. In addition to movant's claim, debtor claims that there are over six hundred fifty (650) other late filed claims. At the time of filing this motion, however, Summer was the only party to file a motion to extend time. The parties agree that aside from late claims, there are two hundred sixty-nine million dollars ($269,000,000) in timely filed claims (one hundred forty million dollars ($140,000,000) in "Investor Claims" and one hundred twenty-nine million dollars ($129,000,000) in trade claims)[3]. Debtor believes it can reduce the total amount of non-investor claims to sixty-eight million dollars ($68,000,000), excluding, among other things, Summer's and all other late filed claims.

Debtor used this sixty-eight million dollar ($68,000,000) figure in negotiating the terms of a plan of reorganization. On February 4, 1994, debtor made a much publicized an-

---

1. The bar date was not discussed in December 6, 1993 hearing. *See* Transcript of hearing, December 6, 1993.

2. Summer's counsel's eighty-two year old father underwent surgery on the bar date according to the certification. However, under the Supreme Court's ruling in *Pioneer Inv. Servs. Co. v. Brunswick Assocs.*, —— U.S. ——, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993), such events in the attorney's personal life bear little weight. *See* discussion *infra* p. 584.

3. These figures are used for the sole purpose of determining this motion. They do not constitute a finding as to the exact amount of claims which remain subject to further proceedings.

nouncement that an agreement in principle had been reached with the official committee of unsecured creditors and investors concerning the terms of a plan of reorganization. However, two and one-half months later no plan has been proposed or finalized.

Summer argues that the delay in filing was relatively short, the amount of the lease rejection claim is minimal in relation to all of the claims, debtor has not suffered any prejudice as a result of the delay and movant has acted in good faith. Summer further argues that after balancing the equities the late filing of the claim for lease rejection damages constitutes "excusable neglect" under Bankruptcy Rule 9006(b)(1) so as to permit the court to extend the period of time within which such claim may be filed. Debtor contends that Summer has not demonstrated excusable neglect because the reason for the delay was entirely within counsel's control and permitting this case would open the floodgates to the allowance of all late filed claims. Debtor further contends that it has been prejudiced because it already conducted extensive negotiations for a proposed plan of reorganization using figures that excluded movant's claim.

## DISCUSSION

Bankruptcy Rule 3003(c)(3) permits the court "for cause shown" to extend the time period within which proofs of claim may be filed. Bankruptcy Rule 9006(b)(1) governs enlargement of time periods generally and allows the court to permit a late filing if the movant demonstrates that "the failure to act was the result of excusable neglect." The creditor seeking relief has the burden of proving "excusable neglect." *In re Trump Taj Mahal Assocs. (Trump Taj Mahal Assocs. v. O'Hara)*, No. 93–3571 Adv. No. 93–2056, 1993 WL 534494 (D.N.J. Dec. 13, 1993) (citing *In re Nutri\*Bevco*, 117 B.R. 771, 781 (Bankr.S.D.N.Y.1990)).

The Supreme Court has recently resolved a conflict among the circuits and clarified the meaning of "excusable neglect." *Pioneer Inv. Servs. Co. v. Brunswick Assocs.*, — U.S. —, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). The Supreme Court first defined neglect as "inadvertence, mistake, or care-

lessness, as well as by intervening circumstances beyond the party's control." — U.S. at —, 113 S.Ct. at 1494. The Supreme Court then examined what types of neglect would constitute "excusable" and concluded that the decision is "at bottom an equitable one." *Id.* — U.S. at —, 113 S.Ct. at 1498. The Supreme Court articulated four non-exclusive factors that courts should consider in balancing the equities: "[1] the danger of prejudice to the debtor, [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith." *Id.*

In *Pioneer*, the Court considered whether a proof of claim filed twenty (20) days late due to a disruption in counsel's law practice and an irregularity in the fixing of a bar date in a Notice of Meeting of Creditors constituted "excusable neglect." The majority found that the disruption in law practice was of no import. The Supreme Court also found that the bar date notice could have created a "dramatic ambiguity" because the form of notice differed from that in the Model Notice of Official Bankruptcy Form 16. The Court noted that the attorney nevertheless was remiss in failing to notice the bar date, but that this neglect was excusable under all the circumstances. *Id.* — U.S. at —–—, 113 S.Ct. at 1499–1500.

The Court balanced the equities and found that the lack of prejudice to the debtor and judicial administration, and good faith on part of movant "weigh strongly in favor of permitting the tardy claim." *Id.* — U.S. at —, 113 S.Ct. at 1500.

### I. *Prejudice to the debtor.*

Debtor contends that it has been prejudiced for two reasons. First, the agreement in principle for a plan of reorganization which did not consider movant's claim, will have to be renegotiated. Second, allowing movant's claim would set a precedent for the allowance of hundreds of additional late filed claims.

This court does not find any prejudice to the debtor as a result of negotiations for a plan of reorganization which excluded mov-

ant's claim. Well before the negotiations debtor was fully aware of the existence of movant's claim and of the pending motion to extend the time to file the proof of claim. To the extent that Debtor assumed the court would decide the motion in its favor by excluding the lease rejection claim from negotiations, it did so at its own risk, and would have been a cause of any prejudice that might have occurred. However, the court finds that there is no prejudice to the debtor. It has become apparent that any agreement in principle reached at the February 4, 1994 meeting has not been finalized, and as of the date of this opinion no proposed plan of reorganization has materialized. The absence of a confirmed plan of reorganization indicates a lack of prejudice to the debtor. *Id.* —— U.S. at ——, 113 S.Ct. at 1499; *In re Eagle–Picher Indus., Inc.*, 158 B.R. 713, 715 (Bankr.S.D.Ohio 1993) (citing *In re Dietz*, 136 B.R. 459, 469 (Bankr.E.D.Mich.1992)) (same).

The debtor also asserts that permitting this claim would open the flood gates to hundreds of other late filed claims. Along this line debtor also argues that bar dates would be rendered nugatory and any certainty in allowable claims would be eliminated. While the court is sensitive to the potential for a flood of additional claims and the importance of certainty, we are constrained by the Supreme Court's decision in *Pioneer* which squarely rejected this argument. The majority, in rebutting the dissent's argument, stated,

> [t]he only reliable means of eliminating the "indeterminacy" ... would be to adopt a bright-line rule of the sort embraced by some Courts of Appeals, erecting a rigid barrier against late filing attributable in any degree to the movant's negligence. As we have suggested, however, such a construction is irreconcilable with our cases assigning a more flexible meaning to "excusable neglect." Faced with a choice be-

tween our own precedent and Black's Law Dictionary, we adhere to the former.
—— U.S. at —— n. 1, 113 S.Ct. at 1498 n. 1.[4]

Furthermore, of the hundreds of late filed claims in this case, only Summer made a motion to extend time to file his claim. Over three months[5] have now passed since the expiration of the bar date and the circumstances of any motions made by other late claimants would be vastly different than Summer, who made his motion to extend on January 24, 1994.

## II. Length of delay and impact on judicial proceedings.

■ The lease rejection claim was filed only nine days late, and the impact on judicial proceedings is *de minimis*. Courts have permitted filings where the delay was substantially greater. *See, e.g., Pioneer*, —— U.S. ——, 113 S.Ct. 1489, 123 L.Ed.2d 74 (twenty days late had no impact on judicial proceedings); *In re Byrne*, 162 B.R. 816 (Bankr.W.D.Wisc.1993) (impact on proceedings minimal where proof of claim filed one year and two months late); *In re Thomson McKinnon Sec., Inc.*, 159 B.R. 146 (Bankr. S.D.N.Y.1993) (motion to extend granted where proof of claim filed two and one-half years late); *In re Eagle–Picher Indus., Inc.*, 158 B.R. 713, 715 (Bankr.S.D.Ohio 1993) (citing *In re Dix*, 95 B.R. 134, 138 (9th Cir.BAP 1988)) (two week lateness is minimal and will not affect administration of estate).

## III. Reason for the delay.

■ Debtor contends that movant has not established an adequate reason for the delay in filing the lease rejection claim because the circumstances were entirely within counsel's control. The court rejects Debtor's argument because blamelessness on the part of the movant is no longer the standard of "excusable neglect." *Pioneer*, —— U.S. at ——, 113 S.Ct. at 1498. The Supreme Court meticulously justified its rejection of the standard, urged by the dissent and the debtor in this case, that reason for the delay be

---

4. The dissent in *Pioneer* cited to the Black's Law Dictionary definition of "excusable neglect" to support its position. *Id.* —— U.S. at ——, 113 S.Ct. at 1502.

5. The court extended the briefing schedule at the request of all parties, and has determined this motion on an expedited basis.

based on circumstances beyond the control of the movant. *Id.* — U.S. at — – —, 113 S.Ct. at 1495–99.

Focussing on the plain language of the term "excusable neglect", the majority pointed to Webster's Dictionary's definition of the term "neglect":

> The ordinary meaning of 'neglect' is 'to give little attention or respect' to a matter or, closer to the point for our purposes, 'to leave undone or unattended to, especially through carelessness.' The word therefore encompasses both simple, faultless omissions to act and, more commonly, omissions caused by carelessness.

*Id.* — U.S. at —, 113 S.Ct. at 1495.

While it may be argued that the inclusion of the bar date at the end of an order approving rejection of lease created an ambiguity similar to that in *Pioneer*, this court finds that movant's counsel was remiss in failing to apprehend the proper date. Indeed, counsel admits that the bar date was improperly docketed within the law firm. However, reason for the delay is only one of four factors to be considered by this court. The finding of lack of prejudice and impact on judicial proceedings weigh strongly on the side of finding movant's neglect "excusable."

### IV. *Movant's good faith.*

There has been no allegation that movant has acted in bad faith by filing a tardy lease rejection claim. To the contrary, the late filing is inapposite to movant's interests in that it threatens the allowance of a seven hundred thousand dollar ($700,000) claim. Furthermore, movant has demonstrated his good faith by diligently making a motion to extend time promptly after the late filed proof of claim.

### CONCLUSION

In balancing the equities, this court holds that movant has demonstrated "excusable neglect" under Rule 9006(b)(1) and will permit the extension to file the late lease rejection claim. The court finds that movant's neglect in filing the claim is overweighed by the fact that debtor has suffered no prejudice, the delay was minimal and had no impact upon judicial administration, and movant has acted in good faith.