**In the Matter of PAPP INTERNATIONAL, INCORPORATED, Debtor.**

**Bankruptcy No. BK91–81297.**

United States Bankruptcy Court, D. Nebraska.

Nov. 16, 1995.

Tammy Weissert, Omaha, NE, for trustee.

Robert Metcalfe, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, DC, for I.R.S.

Henry Carriger, Omaha, NE, for I.R.S.

T. Randall Wright, Omaha, NE, for Estate of Papp.

Robert Ginn, Omaha, NE, for petitioning creditors.

Wm. Biggs, Omaha, NE, for individual petitioning creditors.

## MEMORANDUM

TIMOTHY J. MAHONEY, Chief Judge.

Hearing was held on September 29, 1995, on the Motion to Allow Claim filed by United States of America on behalf of the Internal Revenue Service (IRS). Appearances: Tami Weissert, Attorney for trustee; Robert Metcalfe, Attorney for IRS; Henry Carriger, Attorney for IRS; T. Randall Wright, Attorney for Estate of Papp; Robert Ginn, Attorney for Petitioning Creditors; and Wm. Biggs, Attorney for Individual Petitioning Creditors. This memorandum contains findings of fact and conclusions of law required by Fed.Bankr.R. 7052 and Fed.R.Civ.P. 52. This is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(A) and (B).

### Background

An order for relief under Chapter 11 of the Bankruptcy Code was entered against the debtor, Papp International, Inc., on August 12, 1991, after an involuntary petition for relief was filed. A trustee was appointed. In the present matter before the Court, the United States on behalf of the Internal Revenue Service is requesting permission to file

the proof of claim after the expiration of the claims bar date. The motion is brought pursuant to the "excusable neglect" standard at Bankruptcy Rule 9006(c). FED.R.BANKR.P. 9006(b)(1) [hereinafter IRS shall refer to the moving party].

The debtor, a Nebraska corporation, was formed on August 11, 1980, to develop and market the "Papp engine." The Papp engine allegedly turned atomic energy into kinetic energy by mixing noble gases and other chemical agents. The anticipated benefits of the Papp engine over a conventional engine are the following: efficiency; the creation of a long-lasting fuel source; cost savings; and zero pollution emissions. The primary asset of the debtor is the patent for the Papp engine which was granted on January 31, 1984 as patent number 4,428,193 and was assigned to the debtor.

At the time the debtor was incorporated, the majority shareholder of the debtor was the inventor of the Papp engine, Joseph Papp (Papp), but several other parties were also granted shares of stock in exchange for capital contributions. Some of the initial minority shareholders are the Petitioning Creditors, who filed the involuntary bankruptcy petition and have objected to the present motion of the IRS.

Both before and after the debtor was incorporated, Papp convinced several additional people and/or entities across the country to invest money in the development of the Papp engine. These contributions totaled in excess of several million dollars. Whether Papp was acting on behalf of the debtor, other corporate entities or himself when soliciting funds, or whether the contributors became owners of the patent, creditors of Papp or interest holders in an entity related to Papp has been the subject of several lawsuits across the country, both before and since the order for relief in this case. Since Papp's death in 1989, his remaining heirs (the Estate) have actively participated in all of the ongoing litigation and desire to retain any and all interests that Papp possessed in the patent and in documents or research related to the patent.

Despite Papp's gift for attracting investors in the Papp engine, Papp did not make any apparent progress developing the Papp engine into a commercial product, but Papp did spend all of the investors' money. It appears that much of the money invested in the debtor or raised by the debtor was spent by Papp on his personal and/or business expenses. The debtor did not succeed in commercially developing the Papp engine and is a semi-dormant corporation with the patent being the main asset of the debtor.

The Petitioning Creditors started the debtor's bankruptcy case with the desire to settle or set aside all claims to the patent and its technology so the debtor or its successor or assigns can pursue the commercial potential of the technology prior to the impending expiration of the patent. Despite the complexity of the ongoing litigation and the risk that the patent may not realize a return, the Petitioning Creditors, the Estate, and other parties claiming an interest in the debtor or the patent are hopeful that if all of the competing claims can be resolved and if all of Papp's research on the patent can be collected, the remaining interest holders can either market or sell the Papp engine and generate a return on their investment.

The debtor did not list the IRS on its bankruptcy schedules. The IRS was, however, listed on the debtor's matrix and did receive the **Notice of Commencement of Case Under Chapter 11 of the Bankruptcy Code, Meeting of Creditors, and Fixing of Dates (Corporation/Partnership Case)** filed on August 29, 1991 [hereinafter "the Notice" shall refer to this document]. The Notice set December 19, 1991 as the deadline to file a proof of claim. The IRS did not file a proof of claim in this case until September 27, 1993, when a proof of claim for $1,072,203.99 was filed based upon the debtor's estimated corporate income tax liabilities for the tax years ending July 31, 1981 through July 31, 1984. The estimates of income tax liability are apparently based on income received by the debtor from selling licensing rights in the patent to third parties. The IRS did not move to seek permission from the Court to file the proof of claim out of time until October 5, 1994.

The trustee of the debtor's bankruptcy estate, the Estate, the Petitioning Creditors and the Individual Petitioning Creditors are opposed to the Motion to Allow Claim filed by the IRS. It is their position that the IRS should not be permitted to file a late claim because the IRS cannot meet the "excusable neglect" standard under Bankruptcy Rule 9006(c). FED.R.BANKR.P. 9006(b)(1). The Petitioning Creditors have filed a plan of reorganization in this case. The Estate and another entity, Universal Power Concepts (UPC), have filed a competing plan of reorganization. Neither plan nor accompanying disclosure statements have been approved, but both plans treat the IRS's claim as disallowed against the bankruptcy estate.

### Decision

The IRS has shown that the failure to file a timely proof of claim is attributable to "excusable neglect" under Bankruptcy Rule 9006(b). Therefore, the IRS's claim for $1,072,203.99 is permitted to be filed late. However, the claim is not allowed by this order. All objecting parties are granted sixty days to file objections to the claim on the merits.

### Discussion

#### A. Legal Authority

In Chapter 11 cases, a proof of claim is filed pursuant to Bankruptcy Rule 3003(c), which provides:

(1) *Who May File.* Any creditor or indenture trustee may file a proof of claim within the time prescribed by subdivision (c)(3) of this rule.

(2) *Who Must File.* Any creditor or equity security holder whose claim or interest is not scheduled or scheduled as disputed, contingent, or unliquidated shall file a proof of claim or interest within the time prescribed by subdivision (c)(3) of this rule; any creditor who fails to do so shall not be treated as a creditor with respect to such claim for the purposes of voting and distribution.

(3) *Time For Filing.* The court shall fix and for cause shown may extend the time within which proofs of claim or interest may be filed. Not withstanding the expiration of such time, a proof of claim may

be filed to the extent and under the conditions stated in Rule 3002(c)(2), (c)(3), and (c)(4).

(4) *Effect of Filing Claim or Interest.* A proof of claim or interest executed and filed in accordance with this subdivision shall supersede any scheduling of that claim or interest pursuant to § 521(1) of the Code.

FED.R.BANKR.P. 3003(c).

Bankruptcy Rule 3003(c) is read in conjunction with Bankruptcy Rule 9006(b)(1), which provides an exception to the requirement under Rule 3003(c) that a proof of claim should be filed before the claims bar date:

[W]hen an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion ... on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.

FED.R.BANKR.P. 9006(b)(1).

The Supreme Court defined the term "excusable neglect" in *Pioneer Inv. Servs. v. Brunswick Assoc. Ltd. Partnership,* 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). Similar to the present case, *Pioneer* involved a creditor in a Chapter 11 case who was seeking an extension of the claims bar date under Rule 9006(b)(1) after the claims bar date had expired. The five justice majority of *Pioneer* held that Congress intended Rule 9006(b)(1) to be a flexible rule, and defined neglect broadly, permitting courts "to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control." *Id.* at 388, 113 S.Ct. at 1495.

After determining that "neglect" is not limited to situations where the failure to timely file was beyond the control of the filer, the majority held that an equitable evaluation must be made to determine whether the neglect was "excusable." *Id.* at 394–95, 113 S.Ct. at 1498. The Court then determined that the following non-exhaustive list of factors should be considered in each case to

determine whether the neglect is "excusable":

1. The danger of prejudice to the debtor;
2. The length of the delay and its potential impact on judicial proceedings;
3. The reason for the delay, including whether it was within the reasonable control of the movant; and
4. Whether the movant acted in good faith.

*Pioneer*, 507 U.S. at 394–95, 113 S.Ct. at 1498.

### B. *Evaluation of Factors Enumerated under Pioneer*

 The burden of showing "excusable neglect" is on the IRS. *Hanson v. First Bank of South Dakota, N.A.*, 828 F.2d 1310, 1314 (8th Cir.1987). The broad definition of "neglect" in *Pioneer* includes instances where the creditor filed a late proof of claim due to carelessness or mistake. In this case the IRS admits its failure to timely file is a result of a mistake. The issue then is whether the neglect of the IRS was "excusable."

#### 1. *Prejudice to Debtor*

 A very recent decision interpreting the impact of *Pioneer* suggests that the most significant factor of those to be considered when determining the equities, is that of prejudice to the debtor. *In re Sacred Heart Hosp. of Norristown*, 186 B.R. 891 (Bankr. E.D.Pa.1995). The Court must determine whether the IRS has shown that there is no prejudice to the debtor if the IRS's proof of claim is permitted to be filed late. Prejudice to the debtor is interpreted to include prejudice to the creditors or interest holders of the bankruptcy estate as well. *In re Pettibone*, 156 B.R. 220, 229 (Bankr.N.D.Ill.1993). The IRS argues that the lateness of the proof of claim will not prejudice the debtor because a disclosure statement and a plan of reorganization have not been approved in this case. Therefore, because no payout has been determined, the debtor will not be injured by the allowance of the IRS's claim. Several courts have concluded the lack of a confirmed plan indicates a lack of prejudice to the debtor, or in the alternative, that a confirmed plan indicates that prejudice will result to the debtor if a late filed proof of

claim is permitted. *In re Specialty Equip. Cos., Inc.*, 159 B.R. 236, 240 (Bankr.N.D.Ill. 1993); *In re Herman's Sporting Goods, Inc.*, 166 B.R. 581, 584 (Bankr.D.N.J.1994).

The parties opposed to the motion of the IRS state that the debtor will be prejudiced because the parties have proceeded in this case with the belief that the IRS would not file a proof of claim. The Papp Estate and Petitioning Creditors have engaged in substantial litigation concerning their respective rights in the debtor. They have filed competing disclosure statements and plans of reorganization, and one of these plans was filed prior to the date the IRS filed its proof of claim. *See* Filing nos. 96 (disclosure statement and plan proposed by petitioning creditors), 133 (amended plan), 134 (amended disclosure statement); 160 (plan proposed by Estate and UPC), 161 (disclosure statement proposed by Estate and UPC). However, none of the parties objecting to the IRS's motion to allow claim have submitted any evidence to support their position that either they or the debtor will be prejudiced by permitting the IRS claim to be filed late.

The IRS readily acknowledges that this bankruptcy case has been marked by a substantial amount of litigation:

> The history of this Chapter 11 bankruptcy case is one of sharp disagreements over every conceivable subject, from the appropriateness of the filing of the bankruptcy petition (this was an involuntary Chapter 11 bankruptcy case) to the disclosure statements and plans of reorganization filed on behalf of the debtor by various creditors and interested parties. More than half of the time which has elapsed since the filing of the involuntary bankruptcy petition in 1991 has been consumed by arguments over whether this Chapter 11 bankruptcy case should be allowed to proceed.

*Memorandum of Law in Support of United States' Motion to Allow Claim* (IRS Brief), at 13. However, the position of the IRS is that since the objecting parties have been litigating their own interests in the debtor, the bankruptcy case has not moved forward, and the bankruptcy estate is not prejudiced

because no plan has been confirmed. Therefore, permitting the IRS's claim to be filed will not interfere with or disrupt any proceedings thus far accomplished in this case.

The major litigation that took place prior to the date the IRS filed its late claim was the Motion to Dismiss filed by the Papp Estate. That contested matter was decided by this Court on July 6, 1993. Filing no. 110. That motion had been filed by the Estate on October 8, 1991, prior to the expiration of the claims bar date. It alleged that the case should be dismissed because the Petitioning Creditors did not have standing to file an involuntary petition. Filing no. 20. Other issues encompassed in the Motion to Dismiss included: whether the Estate was a shareholder of the debtor; whether the Petitioning Creditors had allowable claims; whether creditors other than Petitioning Creditors had valid allowable claims against the estate; whether it is possible to propose a confirmable Chapter 11 plan in this case; whether the case should be dismissed or converted under 11 U.S.C. § 1112; whether the Petitioning Creditors violated a fiduciary duty or acted in bad faith by filing the involuntary petition; and whether the Petitioning Creditors were insiders of the debtor. *See Preliminary Pretrial Statement,* **Filing no. 48.** The trial date for the Motion to Dismiss was continued on several occasions upon the request of the parties until April 6, 1993.

The position of those parties now objecting to the motion that they financed and litigated the Motion to Dismiss in reliance on the failure of the IRS to file a proof of claim is not credible. The Estate filed its Motion to Dismiss prior to the expiration of the claims bar date. The initial hearing on the Motion to Dismiss was continued several times before the claims bar date expired. *See, e.g.,* Filing nos. 29, 34. That litigation actually concerned what entity could control the debtor and the patent, and did not involve or even refer to the tax claim, even though all parties were aware of the IRS's concerns. In addition, *Pioneer* was decided on March 24, 1993. The evidentiary hearing on the motion to dismiss was held on April 6, 1993. The parties were charged with knowledge, as of March 24, 1993, that the IRS could claim "excusable neglect" for a late filing.

The Court finds that there will be no prejudice to the debtor if the IRS claim is filed late. If the IRS had not filed a proof of claim, it is possible that the bankruptcy estate would have benefitted by not having to further litigate the merits of the claim. However, requiring the debtor to deal with a large claim does not constitute prejudice in this case, first, because there is no money to pay any claim and, second, because no plan dealing with the rights of any other claimant has yet been confirmed. Prejudice to the debtor or the bankruptcy estate is determined by looking at whether the IRS's proof of claim, which may or may not be valid, will injure or damage the debtor. *See* Webster's Ninth New Collegiate Dictionary 928 (1990) (defining "prejudice"). If the IRS's proof of claim had been timely filed, the bankruptcy estate would have had to either object to the claim or provide for the claim in the plan of reorganization. If the claim is permitted to be filed late, the debtor and other interested parties are in the same position as if the proof of claim had been filed on time.

## 2. Length of Delay and Impact on Judicial Proceedings

The IRS argues that the twenty-one-month delay has not impacted the judicial proceedings in this case because a confirmed plan has not been proposed. Under the particular circumstances of this case, the IRS's argument concerning the impact on judicial proceedings is similar to the issue of whether prejudice occurred to the debtor. For the same reasons articulated under Subsection 1, *supra* at 944–45, the judicial proceedings in this case will not be impacted by permitting the IRS's claim to be filed late.

However, the length of the delay in this case is so large that it is necessary to discuss this factor in greater detail. In the Chapter 11 cases since *Pioneer,* which have addressed whether a creditor may file a proof of claim late, at least one court has found that a proof of claim filed six months late is too egregious because a plan of reorganization had already been confirmed. *Specialty Equip.,* 159 B.R. at 240. Another court has found excusable neglect where the creditor filed a proof of

claim two or more years late. *In re Beltrami Enters., Inc.,* 178 B.R. 389 (Bankr. M.D.Pa.1994) (permitting proof of claims filed two years and two and one half years late in case where trustee had not yet filed a disclosure statement and plan). From and after the date the equitable test was discussed in *Pioneer,* no court appears to have adopted a bright line rule regarding how late is "too late" for filing a proof of claim, but the length of delay may be significant when balanced against other factors under *Pioneer.*

The IRS did not file its proof of claim until twenty-one (21) months after the claims bar date expired. As Subsection 3 of this section of the Memorandum will discuss, *see infra* at 946–48, the IRS employees responsible for filing the proof of claim believed that no claims bar date had been set, and therefore, believed that the claim would be automatically allowed as a timely proof of claim, subject to objections on the merits by the bankruptcy estate or other interested parties. However, as the IRS discovered, neither of the two proposed plans of reorganization recognized the claim of the IRS because there actually had been a bar date set and a late filed proof of claim in a Chapter 11 case is not deemed "filed" until the creditor moves for the Court to enlarge the time for filing a proof of claim. *See* FED.R.BANKR.P. 9006(b) ("the court for cause shown may ... *on motion made after the expiration of the specified period" (emphasis added)).* Technically, therefore, in this case, the IRS's proof of claim was approximately thirty-three (33) months late because the IRS did not move for permission from the Court to file a late proof of claim until October of 1994.

Generally, creditors who have received timely notice of the proceedings in a bankruptcy case, but who file a proof of claim as late as the IRS filed its proof of claim, are subject to greater scrutiny from the Court than creditors who are only "slightly" tardy. Creditors are not entitled to make a tactical decision not to timely file, reconsider such a decision, file a late proof of claim, and then hide behind *Pioneer* as a means to disregard Bankruptcy Rule 3003(c). As one post-*Pioneer* bankruptcy court said:

A creditor in a Chapter 11 case who is required to file a proof of claim or wishes to challenge the scheduled amount or priority does not have an unlimited time to file a proof of claim. In a Chapter 11 case, the Court sets a bar date for all permissive and required claim filings. Fed. R.Bankr.P. 3003(c). This "enable[s] the debtor and its creditors to know, reasonably promptly, what parties are making claims and in what general amounts."

*In re Dartmoor Homes, Inc.,* 175 B.R. 659, 664 (Bankr.N.D.Ill.1994). Debtors and interested parties are entitled to learn which creditors are filing claims against the bankruptcy estate on a timely basis. If proofs of claim can be filed up to two or three years late, the bankruptcy estate can be in a limbo over how to set forth a confirmable plan. *See, e.g., In re Pettibone Corp.,* 156 B.R. 220, 229 (Bankr.N.D.Ill.1993) (holding that four year delay was extraordinary in Chapter 11 case where failure to file was attributed to carelessness, and therefore, prejudicial to permit creditor to share in distribution under previously confirmed plan).

The length of time after the bar date that a creditor files a proof of claim is not determinative of excusable neglect, but such tardiness must be considered in the context of the other *Pioneer* factors. The Eighth Circuit Court of Appeals recently discussed the requirement to consider *all* of the *Pioneer* factors and balance the equities. *See Jones Truck Lines, Inc. v. Foster's Truck & Equip. Sales (In re Jones Truck Lines, Inc.),* 63 F.3d 685 (8th Cir.1995). Under the particular circumstances of this case, even though this delay was about two years, judicial proceedings were not implicated, except to the extent the plan proponents will have to amend their proposed plans to deal with the IRS's proof of claim or litigate the merits of the claim. On this issue, the length of the delay is significant, but only if it impacts the case, was intentional or was in bad faith can it be the factor that tips the balance against a finding of excusable neglect.

### 3. *Reason for Delay and Whether within Movant's Control*

The IRS argues that ambiguity in the Notice regarding the claims bar date and advice

from the District of Nebraska Bankruptcy Clerk of Court's Office (Clerk's Office) caused the IRS to believe that no claims bar date had been established in this case. Prior to September, 1989, the notice issued by the Clerk's Office was entitled: **"Order for Meeting of Creditors, Combined with Notice thereof and of Automatic Stay."** *See,* **Ex. 1, Att. B, C.** Creditors required to file a proof of claim were told they "must file their proof of claim on or before the last day fixed for filing a proof of claim." *Id.* No claims bar date was established in this notice.

The Notice issued in this case is entitled **"Notice of Commencement of Case under Chapter 11 of the Bankruptcy Code, Meeting of Creditors, and Fixing of Dates (Corporation/Partnership Case)." Ex. 1, Att. A.** After the addresses of the debtor and the location of the first meeting of creditors, and on top of the first paragraph of instructions, the Notice states: "Filing Claims: Deadline to File a Proof of Claim is 12/19/91." The forms were changed in 1989 when the bankruptcy court adopted the BANCAP computer system, which computerized bankruptcy docket reporting. The BANCAP system automatically set a bar date for filing a proof of claim and printed the date on the Notice of Commencement.

 The first argument of the IRS is that the claims bar date is buried in the Notice and is not easily ascertainable in the midst of boilerplate language, and therefore, the IRS is not responsible for missing the bar date. The Supreme Court considered this argument in *Pioneer, supra.* In *Pioneer,* the bar date was contained in a document entitled: "Notice for Meeting of Creditors." 507 U.S. at 383–84, 113 S.Ct. at 1492. In addition, the claims bar date was listed after a discussion concerning which creditors were required to file a proof of claim. *Id.* The Supreme Court stated that inserting the notice of the claims bar date in the midst of boilerplate regarding a notice for the first meeting of creditors was "dramatically ambiguous." *Id.* at 398–99, 113 S.Ct. at 1500. However, the Supreme Court also noted that while the notice may be ambiguous: "that is not to say, of course, that respondents' counsel was not remiss in failing to apprehend the

notice." *Id.* The Court concluded that had there been a showing of prejudice to the debtor or to judicial administration, such ambiguity would not have excused the attorney's conduct. *Id.*

In the Notice issued in this case, the Notice's title indicates that important dates are contained in the document. The claims bar date is listed prominently in the Notice. The bar date is not buried in boilerplate language, but is prominently typed at the top of the discussion portion of the Notice. There is nothing ambiguous regarding where the claims bar date is listed on the Notice, and therefore, the IRS's first argument that the date is ambiguously buried amidst boilerplate language is rejected.

 The IRS's second position is that the IRS disregarded the claims bar date in the Notice because the Clerk's Office advised the IRS to ignore the claims bar date. Two agents of the IRS have alleged that in 1989, an employee of the Omaha Clerk's Office and another employee of the Lincoln branch of the Clerk's Office informed the agents separately that the claims bar date contained on the new Notice of Commencement of Case was a consequence of the computerization of the docketing reports and that this date should be ignored. A hearsay objection was made regarding this testimony. Over objection, this evidence will be considered only to show the state of mind of the IRS's representatives, and not for the truth of the statements made by the Clerk's employees.

The IRS maintains that based upon its agents' belief that the printed claims bar date was not effective, the policy of the IRS through 1991, when the Notice in this case was issued, was to ignore the claims bar date listed on the Notice. Because of this belief, the IRS proceeded as though no claims bar date had ever been established by the Court in this case through September of 1993 when the proof of claim was filed. *See,* **Estate Ex. 1, Att. 7.**

This argument is troubling because the IRS allegedly spoke to the Clerk's Office in 1989, two years before this bankruptcy case was filed. There is no evidence that either the Clerk or either judge of this district were

ever requested to clarify the issue, even though every Chapter 11 case commencement notice after September, 1989, listed a claims bar date. However, although troubling, the IRS's position is reasonable when the evidence of what the IRS believed to be the Clerk's Office policy is considered in conjunction with the wording of the boilerplate in the Notice. Under "PROOF OF CLAIM," the Notice states: "If the court sets a deadline for filing a proof of claim, you will be notified." **Ex. 1, Att. A.** In addition to the Clerk's office advice and the ambiguous Notice, there is no evidence that when the forms changed in 1989 and when the Clerk's Office began publishing the claims bar date on the Notice of Commencement, any written statement was issued or local rule was promulgated to put the bankruptcy bar on notice that the listed proof of claim bar date was valid. Since the IRS agents were told to ignore the published claims deadline and since the language in the body of the Notice states that a claims bar date will be set by the Court in the future, the IRS's failure to timely file a proof of claim was logical and the mistake should be deemed beyond the control of the IRS.

There is no question that the IRS was able to timely file a proof of claim. However, the reason the IRS gives for its failure is credible and the IRS should not be held accountable for the ambiguity in the Notice or the change in local practice.

### 4. *Good Faith of IRS*

There is no evidence that the IRS acted in bad faith.

### Conclusion

The Court finds that the IRS's failure to file a timely proof of claim in this case is attributable to "excusable neglect." The IRS has met its burden under the standards enumerated in *Pioneer.* The lack of a confirmed plan and the lack of evidence showing that permitting the IRS to file a late proof of claim will prejudice the bankruptcy estate mitigates against the incredible tardiness of the IRS's claim. Since that tardiness is attributable to factors beyond the reasonable control of the IRS, the failure of the IRS to file a timely claim is "excusable."

The proof of claim is permitted to be filed out of time. The objecting parties are granted sixty days to file an objection to the proof of claim on the merits.