In re William G. MCKISSICK, Debtor.

CIT Group, Inc., Movant,

v.

William McKissick, Respondent.

Bankruptcy No. 02–11885.
No. 85.

United States Bankruptcy Court,
W.D. Pennsylvania.

Sept. 9, 2003.

David L. Hotchkiss, Meadville, PA, for Debtor.

Keith E. Whitson, Pittsburgh, PA, for CIT Group, Inc.

## OPINION

WARREN W. BENTZ, Bankruptcy Judge.

### Introduction

William G. McKissick ("Debtor") filed a voluntary Petition under Chapter 11 of the Bankruptcy Code on August 30, 2002 ("Filing Date"). The deadline for filing proofs of claim was fixed as February 13, 2003 ("Bar Date"). Before the Court is the MOTION OF CIT GROUP, INC. TO FILE PROOF OF CLAIM PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9006(b)(1). CIT seeks authority to file a late proof of claim. Debtor opposes the Motion. A non-evidentiary hearing was held on May 5, 2003. Based on the non-disputed facts of record and the argument of counsel, we entered an Order dated May 14, 2003 which granted CIT an enlargement of time until June 2, 2003 to file its proof of claim. Debtor subsequently filed a Notice of Appeal and a Motion for Leave to Appeal which are pending before the United States District Court. We write to amplify upon the basis for our decision.

### Facts

On January 6, 2003, CIT filed a Motion for Relief from Stay ("Motion"). In its response to CIT's Motion, Debtor admits the following facts:

1. CIT, through its predecessor in interest, entered into several Conditional Sales Agreements ("Agreements") with the Debtor whereby Debtor agreed to purchase certain equipment from various third parties and agreed to make periodic payments for that equipment to CIT.[1]

2. Debtor defaulted on his obligations under these Agreements and CIT agreed to a revised schedule of payments.[2]

3. Debtor defaulted several times thereafter on the revised payment schedules.

4. CIT repossessed four trailers.

---

**1.** The Conditional Sales Agreements attached to the Motion reveal that the predecessor in interest is Newcourt Financial USA, Inc. ("Newcourt").

**2.** A revised schedule was provided for each separate loan. Each document is on CIT Group letterhead which bears an address of 1769 Paragon Dr., Ste. 100, Memphis, TN 38132 and each is signed by the Debtor and a representative on behalf of Newcourt.

5. On or about March 4, 2002, CIT sent its notice of intent to sell this equipment.[3]

6. Debtor sought to redeem the equipment prior to sale. Debtor filed a Complaint in Equity against CIT Group Inc., formerly known as Newcourt Financial USA, Inc. in the Court of Common Pleas of Venango County, Pennsylvania. On April 1, 2002, Debtor obtained an ex parte injunction prohibiting CIT from selling the equipment. Debtor sought an accounting of the amount due CIT.

7. CIT promptly provided Debtor with all information that he claimed to need in order to obtain financing to redeem the collateral.

8. In May, 2002, Debtor advised CIT that it was still attempting to obtain financing.

9. Debtor determined in late June, 2002, that refinancing could not occur and notified CIT that refinancing proceeds would not be available to redeem the equipment.

10. Debtor filed his bankruptcy case on August 30, 2002.

11. Debtor is aware that CIT is a creditor in the bankruptcy case.

In Schedule D, Creditors Holding Secured Claims, Debtor lists seven (7) separate obligations to:

New Court Financial (CIT)

PO Box 71521

Chicago, IL 60694–1521

In its Statement of Affairs, Debtor lists the repossession by CIT. The name and address of the creditor is shown as:

CIT Group (New Court)

1769 Paragon Drive

Suite # 100, Memphis, TN

38132

Debtor's Petition includes a Creditor Matrix ("Matrix"). The Matrix lists New Court Financial, PO Box 71521, Chicago, IL 60694–1521 as a creditor. The Matrix makes no reference to CIT Group or CIT as a creditor.

The date for filing a Proof of Claim was fixed as February 13, 2003 by notice issued by the Clerk of the Bankruptcy Court ("Clerk"). The "Notice of Chapter 11 Bankruptcy Case, Meeting of Creditors, & Deadlines" containing the bar date was mailed and served by the Clerk upon the persons and entities which appeared on the Matrix provided to the Clerk by Debtor's counsel. The Matrix did not designate CIT as a creditor. It did designate New Court Financial (CIT), PO Box 71521, Chicago, IL 60694–1521. Debtor asserts, and we accept as true, that this was the address where Debtor sent all periodic payments until Debtor ceased making regular payments in September, 2001.

On October 29, 2002, Debtor was directed by ORDER FOR SERVICE OF CLARIFYING NOTICE OF BAR DATE to "not less than thirty (30) days before the Bar Date for filing proofs of claim, give to each creditor and each party who has filed a written request for notices, a written notice containing the information shown on the form of NOTICE TO CREDITORS, attached hereto."

The NOTICE TO CREDITORS was mailed by Debtor's counsel on January 20, 2003. A copy went to CIT Group, Inc., care of its counsel of record:

CIT Group, Inc.

C/O Keith E. Whitson, Esquire

---

**3.** The notice is on CIT letterhead. It shows CIT's physical address as 1540 W. Fountainhead Pkwy., Tempe, AZ 85282 and a mailing address of PO Box 27248, Tempe, AZ 85285–7248.

Schnader, Harrison, Segal & Lewis, LLP

120 Fifth Avenue, Suite 2700

Pittsburgh, PA 15222–3001

Debtor failed to comply with the October 29, 2002 Order. The NOTICE TO CREDITORS was mailed less than 30 days before the February 13, 2003 Bar Date.

On March 10, 2003, Debtor filed a Complaint (the "Complaint") seeking various relief against CIT Group, Inc. In Count II of the Complaint, at ¶ 2, Debtor identifies the Defendant as CIT Group, Inc., a corporation located at 1540 West Fountainhead Parkway, Tempe, AZ with a mailing address of PO Box 27248, Tempe, AZ 85285–7785. By Order dated April 16, 2003, the pending Complaint and the Motion for Relief from Stay were resolved by consent order. The parties specifically left open the issue presented by the within motion, i.e., whether CIT was entitled to an enlargement of time for filing a proof of claim.

### Discussion

In a Chapter 11 case, "[t]he Court shall fix and for cause shown may extend the time within which proofs of claim or interest may be filed." Fed.R.Bankr.P. 3003(c)(3). "[W]hen an act is required or allowed to be done at or within a specified period by these rules or by a notice thereunder or by order of court, the court for cause shown may at any time in its discretion...(2) on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect." Fed. R.Bankr.P. 9006(b).

The period for performance of the act to be done, the filing of a proof of claim, expired on February 13, 2003. CIT filed the present motion on April 2, 2003. Since the motion was filed "after the expiration of the specified period," we must determine if CIT's failure to file a proof of claim was due to excusable neglect.

"Our discussion of the issue of 'excusable neglect' must start with a review of *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership,* 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993)." *In re O'Brien Environmental Energy, Inc.,* 188 F.3d 116, 125 (3d Cir. 1999). In *Pioneer,* "The Supreme Court addressed excusable neglect in the context of Fed.R.Bankr.P. 9006(b)(1), governing the enlargement of time for filing proofs of claim in bankruptcy case." *In re Orthopedic Bone Screw Products Liability Litigation,* 246 F.3d 315, 322 (3d Cir.2001).

In *Pioneer,* the Supreme Court determined that a Chapter 11 creditor was entitled to file its proof of claim after the deadline set by the bar date because its failure to file timely was the result of "excusable neglect" within the meaning of Rule 9006. 507 U.S. at 398–99, 113 S.Ct. 1489. In so holding, the Court explicitly rejected the argument that excusable neglect applies only to those situations where the failure to comply is a result of circumstances beyond the creditor's reasonable control. *Id.* at 388, 113 S.Ct. 1489. It acknowledged that the mere use of the word "neglect" encompassed "omissions caused by carelessness," but took comfort in the fact that parties would still be deterred from ignoring court ordered deadlines since the neglect must be "excusable." *Id.* at 395, 113 S.Ct. 1489. It stated that determining whether neglect is excusable is an "equitable" determination that "tak[es] account of all relevant circumstances surrounding the party's omission." *Id.* Such an equitable determination, it reasoned, is consistent with the policies underlying Chapter 11, as "Chapter 11 provides for reorganization with the aim

of rehabilitating the debtor and avoiding forfeitures by creditors." *Id.* at 389, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74. "In overseeing this...process, the bankruptcy courts are necessarily entrusted with broad equitable powers to balance the interests of the affected parties, guided by the overriding goal of ensuring the success of the reorganization." *Id.* To make the excusable neglect determination, the Court listed four factors for courts to consider: "the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.* at 395, 113 S.Ct. 1489.

Under the facts of *Pioneer*, the Court noted that the failure to file on time was inadvertent and in good faith, as counsel was not aware of the bar date. It found that there was no danger of prejudice to the debtor or the administration of judicial proceedings, as the claim, though untimely, was accounted for in the reorganization plan and was filed prior to the plan's effective date. Finally, the Court found relevant that notice of the bar date "was outside the ordinary course" in that it was not, as it should be, "prominently announced and accompanied by an explanation of its significance." *Id.* at 398, 113 S.Ct. 1489. Instead, the "inconspicuous placement" of the deadline-a single sentence in a boilerplate document, that, according to its title, related to a creditor's meeting—"left a 'dramatic ambiguity' in the notification." *Id.* For these reasons, the Court found that there was excusable neglect and allowed the late filing.

*O'Brien Environmental Energy,* 188 F.3d at 128.

■ We will address each of the four factors in turn: 1) prejudice to the Debtor, 2) length of the delay and its potential impact on judicial proceedings, 3) the reason for the delay, and 4) whether the movant acted in good faith.

*Prejudice*

■ The Debtor and CIT were involved in litigation prior to the bankruptcy filing and have continued to litigate within the bankruptcy case. Debtor is and has been throughout the course of this case fully aware of the nature and amount of CIT's claims. CIT's claim is not a surprise.

Debtor directs our attention to the case of *In re Freeport Kitchen Foods, Inc.,* 1996 WL 761437 (Bankr.W.D.Pa. Dec.19, 1996). *Freeport Kitchen* involved a debtor that had elected small business treatment under § 1121(e). The Court noted:

In *Pioneer Investment* the creditor was found to have acted in good faith and there was no danger of prejudice to the debtor and no adverse impact on judicial administration. *Id.* at 397, 113 S.Ct. at 1499. In the instant case the disclosure statement explained the dispute over Distributors' claim and estimated the difference in distribution if the claim was allowed versus if it was not. The creditors voted to accept the plan and this court confirmed it. Thus, there is no prejudice in this regard. We acknowledge that the delay was minimal (one week). However, in small business cases, deadlines for debtors to file and secure acceptance of their disclosure statement and plan are shorter than in chapter 11s wherein debtors have not elected small business treatment. 11 U.S.C. § 1121(e). As a practical matter, in negotiating small business plans, debtors and creditors must be able to rely upon the claims filed by the bar

date in order to satisfy the stringent time requirements for confirmation. *Freeport Kitchen,* 1996 WL 761437 at *3.

Debtor has not elected small business treatment and is not subject to the strict timelines for filing a disclosure statement and plan. A disclosure statement and plan have yet to be filed. This case is not nearing conclusion and allowance of the claim will cause no prejudice to the administrative processing of the case.

Debtor posits that it will be prejudiced by the late filing of CIT's claim as its unsecured claim will approximate 75% of the unsecured debt which may impair the ability of the Debtor to win affirmative votes from the other members of the class of unsecured creditors.

This is not a case where Debtor has negotiated a plan, sought creditor approval, and obtained confirmation of a plan. *See In re Eagle Bus Mfg., Inc.,* 62 F.3d 730 (5th Cir.1995); *In re Pettibone Corp.,* 162 B.R. 791 (Bankr.N.D.Ill.1994). *In re Freeport Kitchen Foods, Inc.,* 1996 WL 761437 (Bankr.W.D.Pa. Dec.19, 1996). CIT is filing its claim in plenty of time for inclusion in any plan that Debtor has yet to negotiate and file, solicit acceptances, and obtain confirmation.

It cannot be maintained that unsecured claimants that timely filed proofs of claim are more deserving of remedy, for purposes of equity, that tardy claimants with similar claims, presuming the failure to file on time was excusable. By excluding CIT, other unsecured creditors would receive what is essentially a "windfall," compromised by some portion of any distribution that would be owed to CIT. The loss of a windfall is not prejudicial. *See In re Orthopedic Bone Screw Products Liability Litigation,* 246 F.3d 315, 324 (3d Cir.2001); *In re Cendant Corporation PRIDES Litigation,* 235 F.3d 176, 184 (3d Cir.2000).

If CIT's claim is permitted to be filed late, the Debtor and other interested parties are in the same position as if the proof of claim had been filed on time. *In re Papp Int'l., Inc.,* 189 B.R. 939, 945 (Bankr. D.Neb.1995).

The facts of record lead us to conclude that there is no prejudice in allowing CIT to file its proof of claim.

## Length of Delay

■ The Bar Date was February 13, 2003. CIT filed its Motion on April 3, 2003, seven (7) weeks later. During that seven weeks, Debtor and CIT were actively negotiating other issues. The delay did not impair balloting on a proposed plan or the disclosure statement and/or the confirmation process. The delay in filing is minimal and causes no effect on the judicial process. *See Chemetron Corp. v. Jones,* 72 F.3d 341, 350 (3d Cir.1995) (remanding to determine excusable neglect where motion to file late claim occurred two years after plan was confirmed); *In re Eagle Bus Mfg. Inc.,* 62 F.3d 730, 740 (5th Cir.1995) (finding excusable neglect where delay was six to eight months).

## Reason for Delay

■ Prior to the bankruptcy filing, Debtor was involved in litigation with CIT. Debtor was aware that CIT was a creditor. On its Statement of Financial Affairs, Debtor listed the address of those at CIT most intimately familiar with the Debtor and the repossession of the vehicles. However, on its Matrix, Debtor listed the creditor as Newcourt and used the post office box remittance address for payments. The address on the Matrix was not designed to provide notice to those at CIT most intimate with the case.

For purposes of this Motion, we accept that Newcourt timely received the "Notice of Chapter 11 Bankruptcy Case, Meeting

of Creditors, & Deadlines" mailed by the Clerk to those on the Matrix. Likewise, counsel for CIT was aware of the bankruptcy case and was mailed, albeit late, the Clarifying Notice of Bar Date on January 20, 2003.

While it is certainly relevant that the delay in this case was due in part to the lack of care on the part of CIT through Newcourt and its counsel, "the concept of excusable neglect clearly anticipates this, i.e., neglect on the part of the one seeking to be excused." *In re O'Brien Environmental Energy, Inc.*, 188 F.3d at 128 *citing Pioneer,* 507 U.S. at 388, 113 S.Ct. 1489. Thus, CIT's actions are not determinative to the inquiry. *O'Brien* at 128–29.

An examination is also essential to a determination of whether CIT's neglect was excusable. *Id.; See also Chemetron Corp. v. Jones,* 72 F.3d 341, 350 (3d Cir. 1995) (stating that the district court erred in failing to consider the debtor's role in the creditor's delay).

Debtor shares in the blame for the delay in this case. Despite its awareness that CIT was a creditor, Debtor failed to list CIT on the Matrix. Debtor failed to timely serve the Clarifying Notice of Bar Date. We conclude that this factor weighs in favor of the relief requested by CIT.

### Good Faith

There is no evidence that CIT acted in bad faith. Debtor, in its response to the within Motion, admits that CIT is acting in good faith.

### Conclusion

Upon consideration of the applicable tests—prejudice, length of delay, reason for delay, and good faith as well as the facts of this case and the equitable nature of the determination as outlined in *Pioneer* and *O'Brien*—we find that the motion of

CIT Group, Inc. to File Proof of Claim Pursuant to Fed.R.Bankr.P. 9006(b)(1) must be granted. An appropriate Order was entered on May 14, 2003.