**In re FARMLAND INDUSTRIES, INC., et al., Debtors.**

No. 02–50557–JWV.

United States Bankruptcy Court, W.D. Missouri.

Dec. 14, 2004.

---

**32.**   233 B.R. at 167.

Cynthia Dillard Parres, Kansas City, MO, for Debtor.

## MEMORANDUM OPINION[1]

JERRY W. VENTERS, Chief Judge.

This matter comes before the Court on the objection of J.P. Morgan Trust Company, N.A., the Liquidating Trustee for Farmland Industries, Inc. ("FII" or "Debtor") to the claim of American United Life Insurance Company ("AUL") (Claim # 9248). A hearing was held on September 20, 2004. For the reasons set forth below, the Court will sustain the objection to AUL's claim, deny AUL's request to file the proof of claim out of time, and disallow the claim as untimely.[2]

## FACTUAL AND PROCEDURAL BACKGROUND

Prior to the filing of the Debtor's Chapter 11 bankruptcy, AUL had issued a group life insurance policy to FII. On July 30, 2001, FII gave AUL notice that it intended to terminate its group life insurance plan effective on September 30, 2001. Just before the termination date, on September 22, 2001, Julia A. Fancher, an FII employee and group-life insured, was killed by her husband. State law did not allow payment to her husband, the primary beneficiary, because he was responsible for her death. Thus, the proper payees were Ms. Fancher's sons, Daniel and Jason Fancher.

On March 1, 2002, FII sent an executed Group Term Life and Accidental Death and Dismemberment Benefits Termination Agreement & Release (the "Agreement") to AUL which set forth the terms and conditions by which the life insurance plan would terminate effective September 30, 2001.[3] Under the Agreement, AUL was required to retain reserve funds to pay remaining claims and FII agreed to indemnify AUL from "any claims, demands, causes of action, damages, suits or costs of any kind that may be brought against AUL." FII also requested that AUL retain funds necessary to pay the Fancher death claim. AUL did not immediately pay the claim because the father had not yet dis-

---

1. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B) over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a), (b)(1) & (b)(2)(B). The following constitutes the Court's Findings of Fact and Conclusions of Law in accordance with Rules 9014(c) and 7052 of the Federal Rules of Bankruptcy Procedure.

2. The objection to AUL's claim was actually filed by J.P. Morgan Trust Company, N.A., the Liquidating Trustee of the FI Liquidating Trust, which was established by the Debtor's confirmed Plan of Liquidation to liquidate the Debtor's assets. However, for ease of reference and to avoid confusion, the Liquidating Trustee and Farmland Industries, Inc., will be collectively referred to in this Memorandum Opinion as "Debtor" or "FII."

3. The parties offered no explanation why the Agreement was not executed until approximately six months after its effective date.

claimed his interest in the life insurance proceeds. FII then filed bankruptcy on May 31, 2002.

On August 12, 2002, AUL received a disclaimer from the father and sent checks to FII, in the amounts of $50,000.00 each, for forwarding to Jason and Daniel Fancher. But FII did not forward the proceeds to the Fanchers, so AUL sent a letter to FII's counsel on November 12, 2002, stating that AUL would notify the beneficiaries' attorney "who can then pursue any legal remedies against Farmland and the plan to obtain payment." On November 19, 2002, FII's counsel responded that:

> AUL is and remains free to pay the life insurance claim in full if it so chooses. However, it does so at its own peril. In such event, AUL may be subrogated to the rights of the insurance claimants with respect to the Claim as a general, unsecured creditor.

> We understand that this is a difficult and unfortunate situation for all of the parties involved. Farmland is not attempting to avoid its obligations to the beneficiaries of Ms. Fancher's policy. However, Farmland simply cannot pay the Claim at this time by virtue of its status as a Chapter 11 debtor.

Thereafter, AUL commenced an interpleader action in the United States District Court for the Central District of Illinois, naming FII and the Fanchers as defendants. On October 31, 2003, the district court judge gave the parties time to seek appropriate relief in the bankruptcy proceeding. On February 20, 2004, this Court granted AUL's motion to pay the Fanchers' claims, which included interest in the amount of $8,314.30.

On May 27, 2004, AUL filed its proof of claim asserting that it was a "late arising claim, having its basis in the pre-petition Plan Termination Agreement, while the events giving rise to the claim occurred post-petition and were not resolved until recently, after the claims bar date." In FII's objection to AUL's proof of claim, FII contends that the proof of claim should be disallowed as untimely because it was filed almost 17 months after the bar date.[4] FII also contends that the untimely proof of claim should not be allowed because the factors contributing to the untimely filing do not constitute "excusable neglect."

In response, AUL contends that its claim arises from an executory contract between AUL and FII and was timely filed under the plan deadline for filing "rejection claims." Alternatively, AUL asserts that it filed a timely "informal claim" and its claim should be allowed as an amendment to that informal claim. Finally, AUL maintains that the late-filed claim should be allowed pursuant to Fed. R. Bank. P. 9006(b) and the principle of "excusable neglect."

## DISCUSSION

### A. Executory Contract

AUL first argues that its proof of claim was a timely filed "rejection claim" because the Plan Termination Agreement was an executory contract that was not rejected until May 1, 2004, the Effective Date of the Debtor's confirmed Plan of Reorganization. AUL asserts that the Agreement was executory because AUL retained funds to pay certain claims and FII continued to have indemnification obligations under the Agreement. According-

---

4. On Motion of the Debtor, a bar date of January 10, 2003, was established for the filing of claims.

ly, AUL argues that it timely filed a claim arising from FII's rejection of such executory contract prior to the May 31, 2004 deadline to do so.

■ The Court disagrees. Contracts can be treated as executory in bankruptcy if "the obligations of both the bankrupt and the other party are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other." *In re THC Financial Corp.*, 686 F.2d 799, 804 (9th Cir.1982) (quoting V. Countryman, *Executory Contracts in Bankruptcy: Part I*, 57 Minn. L.Rev. 439, 460 (1973)); *see also, Northwest Airlines, Inc. v. Klinger (In re Knutson)*, 563 F.2d 916, 917 (8th Cir.1977). Courts have consistently held that contracts that only require payment by the debtor are not executory. *See THC*, 686 F.2d at 804; *see also, In re Spectrum Information Technologies, Inc.*, 190 B.R. 741, 748 (Bankr. E.D.N.Y.1996) (holding that debtor's indemnification obligation was insufficient to deem employment agreement an executory contract); *In re Van Dyk Research Corp.*, 13 B.R. 487, 503–06 (Bankr.D.N.J.1981) (holding that debtor's indemnification obligation in purchase agreement was not executory contract).

■ FII's agreement to indemnify AUL contained only one obligation: FII was obligated to pay AUL if AUL incurred any loss as a result of claims brought against AUL. FII had no other obligations under the Agreement other than that of payment, albeit a contingent obligation. Furthermore, the indemnity agreement contemplated FII indemnifying AUL brought against AUL for claims by third parties, not for claims between FII and AUL. Accordingly, the Agreement was not an executory contract, and the claim filed by AUL does not qualify as a timely filed contract rejection claim.

## B. Informal Proof of Claim

AUL alternatively argues that its November 13, 2002 letter to FII's bankruptcy counsel constitutes an informal proof of claim and that its proof of claim should be allowed as an amendment to the informal proof of claim.

■ An informal claim must apprise the court as to the existence, nature, and amount of the claim and clearly state the creditor's intention to hold the debtor liable and pursue such claim in the debtor's bankruptcy estate. *See In re Haugen Constr. Serv. Inc.*, 876 F.2d 681, 682 (8th Cir.1989); *see also, In re Montgomery*, 305 B.R. 721, 725–26 (Bankr.W.D.Mo.2004); *In re Standard Insulations, Inc.*, 138 B.R. 947, 958 (Bankr.W.D.Mo.1992); *In re Laclede Cab Co.*, 186 B.R. 688, 690 (Bankr. E.D.Mo.1995) (creditor's intention to hold debtor liable must be clearly stated to constitute informal proof of claim); *Myers v. Halverson (In re Irvine)*, 105 B.R. 502, 504 (D.Minn.1989) (stating that informal claim cannot be so vague as to require trustee to be mind reader; it must contain written assertion of claim against estate).

■ Here, AUL sent a letter to FII's counsel on November 13, 2002, inquiring as to why checks sent to FII had not been forwarded to the beneficiaries. The letter specifically stated that "AUL will be notifying the beneficiaries' attorney who can then pursue any legal remedies against Farmland and the plan to obtain payment." On November 19, 2002, FII's counsel responded to AUL's letter and stated that AUL was free to pay the life insurance claim but that it "may be subrogated to the rights of the insurance claimants with respect to the claim as a general, unsecured creditor." AUL claims that the letters indicate that the debtor-in-possession was apprised of the existence and

nature of AUL's claim prior to the bar date. This argument is unpersuasive.

■ The letter sent by AUL to FII did not in any way assert that AUL would make a claim against the bankruptcy estate. The letter stated that AUL would alert the beneficiaries' attorney to investigate legal remedies against Farmland but in no way clearly stated AUL's intention to hold FII liable or pursue such claim in FII's bankruptcy estate. A debtor's or trustee's knowledge of a claim is not enough to constitute an informal proof of claim. *See Clark v. Valley Fed. Sav. and Loan Ass'n (In re Reliance Equities, Inc.)*, 966 F.2d 1338, 1345 (10th Cir.1992); *Standard Insulations*, 138 B.R. at 958. The response letter from FII, even if it did acknowledge that AUL might have a claim against the estate—which this Court does not believe it did—was not sufficient to constitute an informal proof of claim. Accordingly, neither the November 13, 2002 letter from AUL to FII's counsel, nor the November 19, 2002 response from FII's counsel to AUL, constituted an informal proof of claim.

## C. Excusable Neglect

■ Last, AUL argues that its claim should be allowed under the excusable neglect standard of Rule 9006(b)(1). AUL asserts that under Rule 9006(b) the court may "on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect." Fed. R. Bankr.P. 9006(b)(1). This rule generally gives a bankruptcy court the authority to enlarge deadlines upon a showing of excusable neglect. Fed. R. Bankr.P. 9006(b)(3).

■ The equitable factors a court must look at when determining whether a party's neglect of a deadline is excusable include: (1) the danger of prejudice to the debtor; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith. *Pioneer Inv. Services Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380, 395, 113 S.Ct. 1489, 1493, 123 L.Ed.2d 74 (1993).

### 1. Prejudice to Debtor

■ AUL asserts that neither FII nor its creditors will be prejudiced by the allowance of AUL's claim. FII argues that it would indeed be prejudiced inasmuch as AUL's claim will result in a reduction of disbursements to creditors who timely filed claims and that the relatively small amount of the claim does not diminish the prejudice to FII. Some courts have concluded that a confirmed plan indicates that prejudice will result to the debtor if a late-filed proof of claim is permitted. *See In re Papp Int'l Inc.*, 189 B.R. 939, 944 (Bankr. D.Neb.1995) (citing *In re Specialty Equip. Cos., Inc.*, 159 B.R. 236, 240 (Bankr. N.D.Ill.1993) and *In re Herman's Sporting Goods, Inc.*, 166 B.R. 581, 584 (Bankr. D.N.J.1994)). Even though AUL's claim is only a fraction of the total unsecured claims filed in this case, the allowance of such a late-filed claim would prejudice FII and its other unsecured creditors. *See, e.g., In re Rose's Stores, Inc.*, 165 B.R. 410, 412 (Bankr.E.D.N.C.1994).

### 2. Length of Delay and Impact on Judicial Proceedings

AUL argues that its claim was filed in the time frame within which additional unsecured claims were still being filed and that its filing will not disturb or delay judicial proceedings. In opposition, FII contends that AUL waited almost 17 months after the bar date had passed before filing its claim and has adversely impacted the bankruptcy proceedings by

causing the Liquidating Trustee to have to deal with AUL's late-filed claim.

To AUL's favor are the facts that "rejection claims" filed by unsecured claimants are still being litigated and other claims are still being processed. However, the Court finds that the 17–month delay by AUL in filing its claim was excessive, even if the impact on judicial proceedings is minimal. *See, e.g., Papp,* 189 B.R. at 946. The delay is particularly perplexing—and inexcusable—in view of AUL's knowledge of the long-standing problems with payment of the Fanchers' claims.

### 3. Reason for Delay

AUL contends that "only the most hyper-vigilant bankruptcy lawyer would have identified a potential, theoretical, or arguable need to file a precautionary Proof of Claim for AUL prior to the January 10, 2003 claims bar date to preserve AUL a spot on the claims register." (AUL Memorandum in Opposition to Liquidating Trustee's Objection to Claim No. 9842, p. 12.) FII counters that AUL was obligated to file a contingent claim based on the prepetition agreement to indemnify.

When parties agree in advance that one party will indemnify the other party in the event of a certain occurrence, there exists a right to payment, albeit contingent, upon the signing of the agreement. *See In re THC Financial Corp.,* 686 F.2d 799, 802–04 (9th Cir.1982); *In re All Media Properties, Inc.,* 5 B.R. 126, 133 (Bankr.S.D.Tex.1980), *aff'd,* 646 F.2d 193 (5th Cir. (Unit A) 1981) (per curiam). "Such a surety relationship is the classic case of a contingent right to payment under the Code and the right to payment exists as of the signing of the agreement, but it is dependent on the occurrence of a future event." *See All Media,* 5 B.R. at 133. The term "claim" is broad enough to encompass an unliquidated, contingent right to payment under a prepetition indemnification agreement executed by the debtor, even though the triggering contingency does not occur until *after* the filing of the petition under the Bankruptcy Code. *See, e.g., In re THC Financial Corp.,* 686 F.2d at 802–04; *In re Hemingway Transport, Inc.,* 954 F.2d 1, 9 (1st Cir.1992) ("That the claim remained contingent, unliquidated and unmatured at the time of the filing of the chapter 11 petition is immaterial to [creditor's] obligation to file a timely proof of claim under the Bankruptcy Code.").

A mistake of law does not constitute excusable neglect. *See Pioneer,* 507 U.S. at 392, 113 S.Ct. 1489 (stating that "inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable neglect'"); *see also, Hartford Cas. Ins. Co. v. Food Barn Stores, Inc. (In re Food Barn Stores, Inc.),* 214 B.R. 197, 200–201 (8th Cir. BAP 1997)(maintaining that mistakes caused by the ignorance or misapplication of the law, such as unfamiliarity with bankruptcy, are not excusable neglect).

It appears from the evidence before the Court that AUL received notice of the claims bar date in November 2002. A contingent claim existed under the indemnity agreement upon the signing of the Agreement by AUL and FII on March 1, 2002, some 10 months before the bar date. At least by November 2002, when AUL exchanged correspondence with FII's counsel, AUL knew that FII had not forwarded payment to the Fancher beneficiaries and that it might have a claim against FII. Upon receiving notice of the bar date, AUL should have filed a proof of claim based on its contingent claim against FII under the indemnity agreement; it could have amended the claim upon liquidation of its claim or it could have withdrawn the claim when payment was made to the

Fanchers. "Hyper-vigilance" was not required; insurance companies regularly file contingent proofs of claim based on contingent, unliquidated claims against debtors. Filing and opposing claims—inside and outside bankruptcy proceedings—is a daily routine for must insurance companies.

### 4. Good faith of AUL

There is no evidence that AUL acted in bad faith.

In sum, based on the factors discussed above, the Court finds that AUL has not met its burden to demonstrate that its failure to file a timely proof of claim was caused by "excusable neglect."

## CONCLUSION

For the reasons stated above, the Court will sustain FII's objection to AUL's claim (# 9248), deny AUL's request to file the proof of claim out of time, and disallow the claim as untimely.

A separate order will be entered in accordance with Rule 9021.